[No. 9277.    Department Two.    February 14, 1911.]

W. M. BLAKELY et al., Appellants, v. S. H. SUMNER et al., Respondents.[1]

VENDOR AND PURCHASER—RIGHTS OF VENDEE—WAIVER. The vendee waives rights under a contract to purchase land, where, on being notified that vendors could not obtain and convey the whole title, he proposed to purchase the vendors' interest at a price to be agreed upon and himself negotiate for the balance of the title.

FRAUDS, STATUTE OF—SALE OF LAND — POSSESSION. Possession does not take an oral sale of land out of the operation of the statute of frauds, where it was not referable to, or in execution of, the contract, but was without the consent of the vendor or after he had repudiated the sale or taken possession himself.

SAME. Permitting another to cut wood on the land is not the taking of such possession by the vendee as to take an oral sale out of the statute of frauds.

[1]Reported in 113 Pac. 257.

Appeal from a judgment of the superior court for King county, Frater, J., entered May 24, 1910, upon findings in favor of the defendants, after a trial on the merits before the court without a jury, in an action of ejectment. Reversed.

*Skeel & Whitney*, for appellants.

*H. H. Benton* and *Will H. Thompson*, for respondents.

Morris, J.—Appellants brought the action, asserting ownership of an undivided three-fifths interest in the land in controversy, and that they were entitled to the possession thereof, which possession was adversely claimed by respondents without right or title. Respondents answered, asserting their right to possession under an oral contract of sale, and prayed for a specific performance. Upon the issues thus framed, trial was had, and judgment entered as prayed for by respondents, from which this appeal is taken.

It is not denied that, in June, 1906, the parties entered into negotiations relative to the sale and purchase of the land. They differ somewhat as to the nature and extent of these negotiations, appellants contending that respondents sought to purchase the lands, and were informed by appellants that they only had an undivided one-half interest in the land at that time; that they would endeavor to obtain the remaining interest, and if so would sell to respondents at a price to be agreed upon; while respondents contend that appellants agreed to sell the land for $1,200 cash, claiming the entire title, but asserting a cloud which they would remove, and then convey. Whatever the contract was, respondents paid appellants $100 upon the purchase price, and appellants subsequently increased their title from an undivided one-half to an undivided three-fifths interest. Respondents sought to obtain this interest, and made a tender of the balance due. Appellants refused the tender, and in March, 1908, wrote respondents that they were unable to procure the remaining interest, and returned the $100 with $20 interest added. Upon

the receipt of this letter, respondents, on April 14, 1908, wrote appellants, saying:

"This is a great disappointment to me . . . I still believe that you would have gone ahead if you had been able to secure title from those people. I want this piece of property and I want you to give me a deed to your undivided interest, and I will negotiate with the other owners for their interest. Write me at once, please, what you think I ought to pay for your interest and forward deed to bank for collection. I think this is a fair proposition and, under the circumstances, one which you ought to accede to without delay."

About a week after writing this letter, respondents, through an attorney, again wrote appellants, returning the $120, and insisting upon a deed from appellants for the three-fifths interest at the price claimed to have been originally agreed upon, to which appellants responded declining to negotiate further respecting the property. Accepting the finding of the lower court that the contract was as contended for by respondents, we cannot read respondents' letter of April 14 other than as an acquiescence in appellants' inability to carry out the original agreement, and the commencement of new negotiations for a less interest, upon terms to be fixed by appellants. This, it seems to us, was a waiver of any claim of right under the first contract, and prevents respondents from now seeking its enforcement.

There is, however, another question presented to us by this record that demands a reversal of the judgment. Whatever the contract was, it was admittedly an oral one, and as such, under the universal ruling of all courts, is not enforceable, it being an oral contract for the sale of land, unless it falls within some recognized exception to such rule. Respondents admit such to be the rule applicable here, and contend that the case is without the statute of frauds because respondents were in possession. The facts upon which the claim of possession is based and upon which the court below decreed a specific performance, are these: The land in question consists of a two-acre unimproved piece on the outskirts of Seat-

tle.   Some time in 1906, respondents stated to several per-
sons that they owned the land and claimed possession.   In
1908, the Seattle Electric Company cut some brush and
small timber on the land, with the consent of respondents.
Some time prior to 1908, respondents permitted a neighbor
to cut some wood on the land.   In the fall of 1908, a man
named Wagner built a small stable on the land with respond-
ents' knowledge and consent; it also appearing in this con-
nection that Wagner had a written license or permission
from appellants, dated April 9, 1909, to occupy the land.
On April 23, 1909, respondents erected a small tent house up-
on the land at a cost of about $25.

It does not appear to us that the claim of ownership or
consenting to the cutting of wood or brush on the land, the
only acts from which respondents deduce possession prior to
appellants' letter of March, 1908, and their answering letter
of April 14, would be such possession as is contemplated by
the law, in making possession a shield against the operation of
the statute of frauds.   Nor does it appear that any of these
acts were with the knowledge or consent of appellants, which
is a necessary ingredient in a sufficient possession.   The acts
subsequent to March, 1908, when appellants disclaimed their
contract, could in no wise be held to be a possession growing
out of, or taken in pursuance of, a contract then disaffirmed
by one of the parties thereto and acquiesced in by the other.
It might be it would be good as a possession if respondents
were here claiming a title by prescription, based upon an
adverse possession for the necessary time, but a possession
to take a contract out of the statute of frauds cannot be an
adverse possession.   Under the great weight of authority, in
order to enforce specific performance of a parol contract to
convey land, the possession must have been transferred by the
contract.   Delivery is essential to its validity, and that de-
livery must be pursuant to the contract.   *Swash v. Sharp-
stein*, 14 Wash. 424, 44 Pac. 862, 32 L. R. A. 796.   Not only
does the record disclose neither consent nor knowledge on the

part of appellants, but it affirmatively appears that any possession subsequent to March, 1908, would be an adverse act on the part of respondents, seeking to impress the land with their claim of right, growing out of appellants' refusal to convey rather than the oral contract to convey. There is no authority cited by respondents, nor is any known to us, that will support a claim of possession so made; it being universally held that possession must either be taken with the consent of the vendor, or held with his knowledge, without objection, from which latter fact consent will be presumed. *Christy v. Barnhart*, 14 Pa. St. 260, 53 Am. Dec. 538, and cases cited in note, where, in the main case, it is said:

"It is not to be disputed, at this time of day, that to withdraw a parol sale of lands from the blighting effect of the statute of frauds, there must be an open and absolute possession taken in pursuance of the contract, with a view to the performance of it;"

and as showing the extent to which this rule of possession flowing from and as a part of the contract has been carried, the court further says:

"It is, consequently, a settled rule that a parol sale to a tenant in possession is within the statute, though his possession be afterwards continued because there is no change of possession in execution of the contract."

In *Leslie v. Smith*, 32 Mich. 64, the defendant went upon the land a year after the contract was made, and it was held that such a taking of possession could not be held sufficient, as it could not be referred to the contract.

Pomeroy on Specific Performance, § 120, says:

"The possession must be actual and not merely nominal, open, visible and notorious, so that the fact can be certainly proved by the testimony of the eye-witnesses and not left to be inferred;"

and as against the contention of respondents, that permitting a neighbor to cut wood was an act of possession, Mr. Pomeroy, in a note to this section, cites *Fulton v. Jansen*, 99 Cal. 587,

34 Pac. 331, to the effect "that cutting wood on the land for family use is not a sufficient taking of possession."

The tent house built by respondents, and upon which they strongly rely as an evidence of their possession, was not built until after appellants had, on April 7, 1909, built a three-wire fence with cedar posts upon the property, thus plainly indicating their intention and purpose to claim possession of the property as against any act of respondents. The building of the tent house after that by respondents could not be held to be with the consent or knowledge of appellants, not attributable nor referable to the contract; but rather as an evidence of respondents' intention to hold adversely to appellants' claim of possession. Such a possession cannot be relied upon. In saying that possession must be referable to the contract, we do not mean to be understood as holding that the contract should in itself stipulate or provide for possession to be delivered; as we have heretofore held in *McKay v. Calderwood*, 37 Wash. 194, 79 Pac. 629, that it is not essential that the contract should so provide, but that it was sufficient that the possession be taken in pursuance and in execution of the contract, and with the knowledge of the vendor. Not finding any such possession disclosed in this record, we must give effect to the rule of the statute of frauds, and hold the contract of sale void.

The judgment is reversed, and the cause remanded for further proceedings as herein indicated.

CHADWICK and CROW, JJ., concur.

RUDKIN, J., concurs on the last ground discussed in the opinion of MORRIS, J.