[No. 30179.   Department Two.   December 18, 1947.]

J. L. GRANQUIST *et al.*, *Respondents*, v. KATE McKEAN,
*Appellant.*[1]

[1]Reported in 187 P. (2d) 623.

C. W. *Jordan* and *Wm. A. Johnson,* for appellant.

O. D. *Anderson,* for respondents.

ROBINSON, J.—This action was commenced for the purpose of recovering possession of real property and for a judgment for rent due thereon.

The complaint stated that the defendant was in possession as a tenant, had failed to pay rent for a period of twenty-nine months, and had refused to either pay the rent or surrender possession of the property.

In her answer, defendant admitted possession of the premises, denied that she was a tenant of plaintiffs, and then alleged in a "counterclaim and affirmative defense," in substance, that, in 1937, she and plaintiffs had entered into an oral agreement by the terms of which Joseph Granquist would build a house upon certain premises owned by plaintiffs and would thereafter enter into an agreement to sell the property to her for fifteen hundred dollars, payable three hundred dollars down, and the balance, together with interest at the rate of five per cent per annum, to be paid in monthly installments of fifteen dollars per month. She further alleged that she paid the three hundred dollars in accordance with the contract, entered into possession of the premises under that agreement, and thereafter paid the monthly installments of fifteen dollars until sometime in

1943, at which time, in compliance with advice given to her by her attorney to make no further payments until plaintiffs should execute a written agreement of sale in accordance with the oral agreement, she discontinued payments. In their reply, plaintiffs put in issue the allegations contained in the counterclaim.

The case was tried to the court sitting without a jury, and, at the conclusion of the trial, the court entered findings of fact and conclusions of law to the effect that the evidence failed to establish the agreement claimed by defendant. Thereafter, a judgment was entered restoring possession of the property to plaintiffs and also giving them a judgment for the unpaid rent, less three hundred dollars which plaintiffs admitted having received from defendant. Defendant has appealed.

No good purpose would be served by setting out the assignments of error, fifteen in number. It is sufficient to say that they properly challenged the findings of fact and conclusions of law and judgment entered by the trial court.

The evidence produced at the trial relating to the contract is very much in dispute. It discloses that, in 1937, appellant and respondents were next-door neighbors. It shows that Granquist was a builder by occupation. Appellant was a widow with two small children, and was receiving a pension of twenty dollars per month from the state of Washington. She resided in a small house which she rented from a man by the name of Moore. Mr. Moore sold the property, and appellant was required to move. Thereafter, some discussion took place between the parties regarding the building by respondents, upon property owned by them, of a small house which they would sell to appellant. Appellant testified that the price was to be fifteen or sixteen hundred dollars, to be paid in monthly installments. Respondents erected on the property a one-story house. Appellant paid Mr. Granquist three hundred dollars and received a receipt, dated October 21, 1937, which recited: "Payment on house."

Prior to the commencement of the construction of the house, appellant informed the respondents that she was not

a citizen and could not own real property. Her testimony relative to the contract was as follows:

"A. Well, I had to move. The property had been sold, so I was looking for a place at Edmonds, and I was talking to Mrs. Granquist about it, and she says, 'Well, why don't you interest Mr. Granquist in building a little house for you?' and I said, 'Do you think he would do that for me?' She says, 'Why, I'm sure.' So then I got into a conversation with Mr. Granquist and he said he could build me a house, and I asked him how much he would charge me for a little house. I said I couldn't pay very much, so he said he would draw up a plan. So I saw the plan, and Mrs. Granquist said to me, 'That's too small. Don't you have it.' So I said—I asked Mr. Granquist if he would build me 21 by 28 and if he could build that and let me have a little land; I wouldn't have to move all the time and I would pay him something down. So he looked at my plan. I drew it, and he said, 'Yes, I could build that for $1500.00,' and I said, 'How much land would you let me have?' 'Well,' he said, 'How much do you want?' I said, 'I only want a lot.' So he said, 'Would 60 frontage be all right and 160 down in the gully?' and I said, 'I don't want so much in the gully; I want more frontage,' and so he says, 'Well, how about 65 or 80?' and I said, 'Ninety would be better,' and I said, 'less in the back.' So he says, 'Well, I guess we can arrange that all right.' Then I told him that I wouldn't—after payment of the $300.00, I wouldn't ask him for a contract because I hadn't gotten my citizenship through. And I said, 'I want a contract as soon as that's straightened out or I find out more about it.' He said that would be OK."

And, further:

"A. Well, it took a period of nearly three years before the place was finished as it is now. Q. There were a couple of upstairs rooms, were there? A. That were unfinished, and a temporary staircase. Q. Were they supposed to be finished by him? A. Yes. Q. In his price of $1500.00? A. That's what I understood. Q. And they were finished by him later on? A. Well, they are not completely finished yet."

Appellant moved into the house sometime during the latter part of December, 1937, and thereafter paid the monthly rental of fifteen dollars until the end of 1942. All the receipts received by her for the monthly payments con-

tained the recitals: "For rent of house," and a statement of the period covered by the rent payment.

Sometime prior to 1942, appellant became a citizen of the United States, and thereupon made a demand upon the respondents for the execution of a contract of sale in accordance with the alleged agreement. This was refused by respondents, who claimed that they had made no such agreement. Respondent Joseph Granquist testified that, after appellant informed him, in 1937, that she had been denied citizenship for the second time, all negotiations for the sale of the property ended, and that thereafter there was no promise or agreement by him to sell the property for fifteen hundred dollars, or any other sum of money, or to apply the rent payments upon any contract the parties might thereafter enter into. He testified that he offered to return the three hundred dollars, but that appellant requested him to keep the money for her, and that he promised to pay her interest on the amount. In the early part of 1941, he did apply interest which had accrued up to that time upon the rent and gave appellant receipts which showed such application. He further testified that the cost of construction of the house, as it was finally completed, amounted to $2,928.71, and that he offered to enter into a contract to sell the property to appellant for that amount, but that she refused the offer. Appellant testified that she accepted the rent receipts under protest. There is no denial that the cost of the building was as testified to by respondent.

The evidence further shows that appellant made minor repairs to the house and deducted the cost of those repairs from the rent payments. The evidence does not show that she made any valuable permanent improvements upon the property, except, possibly, the planting of a few fruit trees.

In our opinion, the appellant failed to prove that there was any agreement by respondents to sell the property to appellant for fifteen hundred dollars, or any other sum of money. We are further of the opinion that, if such an agreement had been made, it was void under the statute of frauds.

■ The first requirement of the doctrine that part performance of an oral contract exempts it from the provisions of the statute of frauds is that the contract be proven by evidence that is clear and unequivocal and which leaves no doubt as to the terms, character, and existence of the contract. *Thompson v. Weimer,* 1 Wn. (2d) 145, 95 P. (2d) 772; *Payn v. Hoge,* 21 Wn. (2d) 32, 149 P. (2d) 939; *Jennings v. D'Hooghe,* 25 Wn. (2d) 702, 172 P. (2d) 189.

A mere preponderance of the evidence is not sufficient. If the evidence leaves it at all doubtful as to whether or not a contract was entered into, the court will not decree specific performance.

■ The statute of frauds is a positive enactment, to the effect that contracts for the sale of real property, in order to be valid and enforcible, must be in writing. Courts of equity have no right, any more than courts of law, to disregard the statute, except where it is necessary so to do in order to prevent a gross fraud from being practiced.

■ Another requirement of the doctrine that part performance may take an oral contract out of the statute of frauds is that the acts relied upon as constituting part performance must unmistakably point to the existence of the claimed agreement. If they point to some other relationship, such as that of landlord and tenant, or may be accounted for on some other hypothesis, they are not sufficient. *Broadway Hospital v. Decker,* 47 Wash. 586, 92 Pac. 445; *Blakely v. Sumner,* 62 Wash. 206, 113 Pac. 257; *Burns v. McCormick,* 233 N. Y. 230, 135 N. E. 273; *Woolley v. Stewart,* 222 N. Y. 347, 118 N. E. 847; *Walker v. Bohannan,* 243 Mo. 119, 147 S. W. 1024.

■ The circumstances must also be such that, unless specific performance is granted, a gross fraud will have been perpetrated upon one of the individuals. *Richardson v. Taylor Land & Livestock Co.,* 25 Wn. (2d) 518, 171 P. (2d) 703. The evidence in this case, in our opinion, meets none of these requirements.

■■ There is no evidence that appellant was illiterate or unfamiliar with the requirement that contracts for the sale of land must be in writing, or that she was overreached

or in any way defrauded by respondents. Except for the planting of a few fruit trees, she made no valuable or lasting improvements upon the property. She testified that she did some painting on the inside of the house, paid the cost of some linoleum that was laid in the kitchen and bathroom, and the cost of some window shades. However, these were not improvements which would take the contract out of the statute of frauds.

The trial judge saw the witnesses on the witness stand and in the courtroom. He heard them testify, and, as has been frequently stated in our opinion, was in a much better position to weigh the testimony and ascertain the credibility of the various witnesses than we are. In our opinion, his judgment was entirely correct, and it is, therefore, affirmed.

MALLERY, C. J., STEINERT, JEFFERS, and HILL, JJ., concur.

_____

January 28, 1948. Petition for rehearing denied.