[No. 5004–1.   Division One.   July 31, 1978.]

CLARENCE H. POWERS, ET AL, *Appellants,* v. ROBERT G. HASTINGS, ET AL, *Respondents.*

*Angevine & Johnson* and *Earl F. Angevine,* for appellants.

*Miracle, Pruzan & Nelson* and *Howard P. Pruzan,* for respondents.

DORE, J.—Plaintiffs brought an action for the breach of an oral lease and option to purchase real estate agreement

and obtained a verdict for damages. The trial court granted defendants' motion for judgment n.o.v. Plaintiffs appeal.

## ISSUES

ISSUE 1: Whether the trial court erred in granting a judgment n.o.v. for defendants on the basis that enforcement of the oral lease and option to purchase agreement of the Hastings' farm was barred by the statute of frauds?

ISSUE 2: Whether the testimony of a defendant seller in open court as to the details of an oral lease with option to purchase constitutes sufficient "memoranda" or "writing" under the statute of frauds?

## FACTS

Defendants were the owners of a farm in Skagit County which they desired to sell. They advertised in various publications and in early 1973 plaintiffs contacted defendants in response to an ad. Subsequently the parties orally agreed that plaintiffs could lease the farm for 3 years with an option to purchase. Plaintiffs made substantial improvements in the approximate amount of $14,250 in converting the property into a dairy farm.

In the fall of 1974 plaintiffs had difficulty making the agreed monthly payments and ceased paying altogether in October of 1974. Plaintiffs attempted to obtain financing to purchase the property but the parties disagreed over the existence of the option to purchase agreement and the terms of a possible sale. Defendants refused to give plaintiffs a written lease and as a result plaintiffs claim they were unable to obtain financing so they could exercise their option. Plaintiffs left the property the latter part of 1974 and defendants sold the farm in March 1975 to a third party. Plaintiffs then sued for damages based on breach of the oral lease and option agreement.

The defendants in the pleadings, and in their testimony in open court, admitted the existence of the oral lease agreement and option to purchase defendants' farm. Defendants' only defense was that the lease and option to

purchase agreement was oral and was not enforceable under the statute of frauds.

The trial judge, in granting defendants' motion for judgment n.o.v., found that there was an agreement and option to purchase the defendants' farm but that since such agreement was *not in writing,* it was not enforceable under the statute of frauds. The trial court further found there was no part performance to take the agreement outside the statute of frauds.

## DECISION

██ Our courts have often repeated the rule that a challenge to the sufficiency of the evidence or a judgment notwithstanding the verdict admits the truth of the opponent's evidence and all inferences that can be reasonably drawn therefrom, and requires that the evidence be interpreted most strongly against the moving party in the light most favorable to the opponent. No element of discretion is involved. Such motions can be granted only where the court can say, as a matter of law, there is no substantial evidence to support the opponent's claim. *Davis v. Early Constr. Co.,* 63 Wn.2d 252, 386 P.2d 958 (1963).

With the above guideline in mind, let us examine the authorities to determine whether the parties' oral lease with an option to purchase the defendants' farm is barred by the statute of frauds.

In *Sealock v. Hackley,* 186 Md. 49, 52–53, 45 A.2d 744, 746 (1946), the statute of frauds was offered to prevent the enforcement of an oral contract to convey land and during trial defendant admitted in his testimony the existence of the contract, the parties and the consideration. The court held that the statute did not bar enforcement of the agreement and stated:

> As stated in *Trossbach v. Trossbach,* 184 Md. 47, 42 A. 2d 905, the admissions of a party in the form of testimony constitute sufficient "memoranda" or "writings" under the Statute of Frauds, for recorded testimony is regarded as equivalent to signed depositions. The purpose of the Statute of Frauds is to protect a party, not

from temptation to commit perjury, but from perjured evidence against him. Admissions of a party in testifying, while evidence in form, are in essence not mere evidence, but make evidence against him unnecessary.

On the same issue the Supreme Court of Pennsylvania stated:

> The statute of frauds, however, does not absolutely invalidate an oral contract relating to land but is intended merely to guard against perjury on the part of one claiming under the alleged agreement. Accordingly, if the title holder admits, either in his pleadings or his testimony, that he did in fact enter into the contract, the purpose of the statute of frauds is served and the oral agreement will be enforced by the court: . . . Here defendant, in his testimony, admitted the making of the agreement as claimed by plaintiff.

(Citations omitted.) *Zlotziver v. Zlotziver,* 355 Pa. 299, 302, 49 A.2d 779, 781 (1946). Other courts have likewise interpreted and recognized this rule: *Peacock Realty Co. v. E. Thomas Crandall Farm, Inc.,* 108 R.I. 593, 278 A.2d 405 (1971) (court held the statute of frauds writing requirement for conveyances of land will not bar enforcement of a broker's claim for a commission on a land sale when defendant admits in testimony the existence and terms of the agreement). *Adams v. Wilson,* 264 Md. 1, 284 A.2d 434 (1971) (the court held the statute of frauds provision providing contracts not to be enforced in 1 year must be in writing is not a bar to enforcement of a contract where the party to be charged has admitted the contract in testimony). *Wolf v. Crosby,* 377 A.2d 22 (Del. Ch. 1977) (holding that the rule permitting an admission of an oral agreement and the simultaneous assertion of the statute of frauds as a bar to the enforcement of such an agreement should no longer be recognized). And Corbin has stated:

> Let us proceed, therefore, with a general consideration of what constitutes a sufficient note or memorandum. We may well start with this one general doctrine: There are few, if any, specific and uniform requirements. The statute itself prescribes none; and a study of the existing thousands of cases does not justify us in asserting their

existence. Some note or memorandum having substantial probative value in establishing the contract must exist; but its sufficiency in attaining the purpose of the statute depends in each case upon the setting in which it is found. A memorandum that is sufficient in one case may well be held insufficient in another. *A complete admission in court by the party to be charged should dispense with the necessity of any writing whatever.*

(Italics ours.) 2 A. Corbin, *Corbin on Contracts* § 498, at 683 (1950).

In addition, the Uniform Commercial Code, RCW 62A.2-201(3)(b), recognizes that an oral contract for the sale of goods even though in excess of the $500 limit imposed, is enforceable if "the party against whom enforcement is sought admits in his pleadings, testimony or otherwise in court that a contract for sale was made . . ." *See Dehahn v. Innes,* 356 A.2d 711 (Me. 1976) (holding that the salutary principle embodied in RCW 62A.2-201(3)(b) is applicable to a contract for the sale of goods alone but also should apply equally to the instant contract involving both goods and real estate).

■ Obviously the purpose of the statute of frauds is to prevent a fraud, not to perpetuate one, and in this regard the courts of this state are empowered to disregard the statute when necessary to prevent a gross fraud from being practiced. *Granquist v. McKean,* 29 Wn.2d 440, 187 P.2d 623 (1947). The legislative intent in enacting the statute was to prevent fraud resulting from the uncertainty inherent in oral contracts of this nature. *Miller v. McCamish,* 78 Wn.2d 821, 479 P.2d 919 (1971).

■ In examining the record in the subject case, we find that both parties agreed that the parties had entered into an oral lease with an option to purchase defendants' farm. However, we disagree with the trial court's conclusion that the statute of frauds would bar enforcement of the parties' agreement. Our decision is supported in the record, which reveals that defendants on *six* different occasions admitted the existence of the lease with option to purchase in *writing* or *in testifying in open court.* These occasions were:

1. Defendants in their answer and amended answer admitted the existence of a lease with an option to purchase.

2. Defendant Robert G. Hastings filed an affidavit (Exhibit 32) which spells out with particularity every aspect of the lease and option to purchase. The pertinent parts of the affidavit provide:

STATE OF WASHINGTON }
} SS.
COUNTY OF SKAGIT }

ROBERT G. HASTINGS, being first duly sworn, on oath deposes and says as follows:

That I am one of the defendants named in the above entitled action. That I make this affidavit from my own personal knowledge in support of our motion for summary judgment.

I and Clarence H. Power entered into an oral agreement sometime in late April or May of 1973 wherein he would lease my farm beginning July 1, 1973 for a period of three years with an option to purchase exercisable by him at any time prior to July 1, 1976. Mr. Power was to pay One Thousand Dollars ($1,000) a month for the first twelve months of said agreement and thereafter was to pay Fifteen Hundred Dollars ($1,500) a month which was about what my payments were to the Federal Land Bank. *If he exercised the option he would pay One Hundred Eighty–five Thousand Dollars ($185,000) with Twelve Thousand Five Hundred Dollars ($12,500) down with monthly payments of at least Thirteen Hundred Dollars ($1,300) or something close to that. In addition, he agreed to pay the taxes on the property and also pay the insurance premiums on the buildings effective July 1, 1973.*

Powers was to have his attorney draw up the lease with option agreement which was never done. I offered to have it done by my attorney and there appears to be a discrepancy as to whose responsibility it was to draw up the lease but at any rate no lease was ever drafted or signed to my knowledge.

Powers paid the rent pursuant to our agreement. Powers actually moved onto the farm and occupied the house in about August, 1973.

. . .

Sometime in November, 1974 he came to me and said that if he had a lease he could have obtained money from the Farmers' Home Administration, or someone. Your affiant responded by saying, "Well, let's make up a lease," and Powers responded saying it's too late now . . .

/s/ Robert G. Hastings
Robert G. Hastings

SUBSCRIBED AND SWORN TO before me this 10th day of February, 1976.

/s/ Muriel M. Jones
Notary Public in and for the State of Washington, residing at Sedro–Woolley

(Italics ours.)

3. In testifying at the trial, defendant Hastings in open court admitted the existence of the agreement with an option to purchase.

Q Thereafter, in April or May, '73, you entered into the agreement whereby he could lease it with option to purchase it, is that correct?
A Yes.
Q And the purchase price, there is no question, it was $185,000, is there?
A That's right.
Q And what was the down payment?
A Twenty thousand dollars.

4. At the trial plaintiffs' attorney, in referring to the defendant Hasting's deposition, queried him in open court:

Q And then I asked you: "What did that paper say?" And you said: "Just as I told you, he would pay $1,000 for 12 months, after that $1,500; he would pay taxes, insurance and the Land Bank after he took over", is that correct?
A Would you read that once more?
Q "Well, just what I told you. He would pay $1,000 for 12 months, after that $1,500. He would pay the insurance and taxes and the Land Bank after he took over."
A Yes.
Q Is that right?

A Pretty much so, yes.

. . .

Q I see. *Now, Mr. Hastings, there is no question in your mind that the down payment under your term option was to be $12,500, is that correct?*
A *No, that is not correct.*
Q *I don't mean $12,500, I mean $20,000?*
A *Oh, yes, yes.*
Q That was the down payment?
A Yes.

(Italics ours.)

5. Plaintiffs' counsel introduced Hastings' affidavit, designated exhibit 32, into the court record:

Q I would like to hand you what has been marked Exhibit 32 and ask you to look at that and tell me if you've ever seen that before, you recognize that?
A No, I don't recognize it, but—
Q Would you refer to the last page, please, Mr. Hastings and examine the signature?
A Yes.
Q Do you recognize that?
A It looks like my signature.
Q And this is entitled Affidavit, et cetera, and signed by you in front of a notary public on February 10th of this year.
  Would you check the date on the last page, am I correct on that?
A That's right, yes.

From this colloquy the jury had before it evidence wherein the defendant admitted the existence of the lease and option to purchase his farm by Powers, by acknowledging the written affidavit.

6. The contents of the affidavit relating to the lease and option to purchase were again corroborated by Hastings later in the trial, as shown by the following questions and answers:

Q [By Mr. Angevine] Mr. Hastings, I asked you if it's not a fact that on February—I had better have the original, February 10th of this year that you signed an affidavit in which you stated, "But if he exercised the option he would pay $185,000 with $12,500 down with

monthly payments on the rest at $1,500 or something close to that." Did you sign that affidavit, do you recall?

A It looks like my signature there, yes.

Q And do you know whether or not this was signed under oath?

A You know, I don't remember a darn thing about signing that at all but it does look like my signature.

Q It is your signature?

A It looks like it, yes.

The statute of frauds was enacted to prevent frauds. Here both parties specifically testified as to the existence of an oral lease with an option to purchase defendants' farm and also to its particulars. The feared uncertainty and potential for fraud, inherent in such oral agreements and which is the basis for the statute of frauds' bar against enforcement, are clearly removed by their testimony.

Therefore, we hold that to apply the statute of frauds to bar enforcement of the option agreement in the subject case would constitute a gross fraud.

We further hold that the testimony of defendant Hastings in open court as to the details of the oral lease with option to purchase constitutes sufficient "memoranda" or "writings" to satisfy the statute of frauds, for we view recorded court testimony as equivalent to signed depositions.

We hold that in the subject case the statute of frauds is not a bar to enforcement of the parties' oral lease and option to purchase agreement.

### PART PERFORMANCE

Also, it is apparent that even absent the written and court admissions by the parties that an oral lease and option to purchase agreement existed, there was in the subject case substantial evidence before the jury of part performance. Part performance will support an action for damages. *Miller v. McCamish,* 78 Wn.2d 821, 479 P.2d 919 (1971).

Both parties, the seller and buyer, testified that plaintiff moved onto the property pursuant to the lease with an option to purchase agreement and that he converted the same into a dairy farm and made substantial improvements in the approximate amount of $14,250. That plaintiff made monthly payments of $1,000 per month initially and later $1,500 per month which were far in excess of a reasonable monthly rental value for the farm.

■ This testimony, if believed by the jury, would satisfy the three requirements set forth as guidelines in *Richardson v. Taylor Land & Livestock Co.,* 25 Wn.2d 518, 529, 171 P.2d 703, 710 (1946), which require that the acts of part performance be sufficient to remove the oral agreement from the statute of frauds and must point unequivocally to the agreement sought to be enforced. The principle elements or circumstances involved in determining whether there has been sufficient part performance to unequivocally point to the contract are (1) delivery and assumption of actual and exclusive possession of the land, (2) payment or tender of the consideration, whether in money or property or services, and (3) the making of permanent, substantial and valuable improvements, referable to the contract.

*Richardson* states at page 529:

> We can therefore assert with confidence that no positive rule has been, or can be, formulated for the government or decision of all cases indiscriminately, but that the determination of each case must depend upon the particular facts and circumstances involved therein. *Mobley v. Harkins,* 14 Wn. (2d) 276, 128 P. (2d) 289, 143 A. L. R. 88. However, the theory upon which all courts act in such cases is that it would be intolerable in equity for an owner of land knowingly to permit another to invest his time, labor, and money in that land upon the faith of a contract which did not exist.

We find that the lease with an option to purchase in the subject case is but a single agreement and cannot be divided. We further find that the monthly payments, the taking of possession, and the making of permanent and substantial improvements point unmistakably to the lease

which, necessarily, includes the option to purchase the Hastings farm.

### INSTRUCTION NO. 7

Defendants assign error to the court's giving of instruction No. 7 and argued that "the instruction totally fails to explain to the jury the very difficult but absolutely essential distinction that must be made in this case between the part performance of the oral lease and the part performance of an option to purchase."

The record shows defendants objected to the court's instruction No. 7 as follows:

BY MR. TWEDE: My only exception would be on the basis that the instruction doesn't go far enough.

BY THE COURT: I am going to read "Doing the following act."

BY MR. TWEDE: All right.

BY THE COURT: And you may except to that in that respect.

. . .

BY MR. TWEDE: My further exception to 7 is there is no requirement that there be some benefit going to the term of the proposed oral lease and also alternate possession benefit other than to the tenant.

It is clear that defendants objected to the court's instruction No. 7, but gave a different reason for his objection than he now sets forth in his brief. In addition, defendants failed to submit an alternate instruction No. 7.

■ Failure to object to an instruction with sufficient specificity deprives the trial court of a particular deficiency and precludes consideration of that deficiency on appeal. *Haugen v. Minnesota Mining & Mfg. Co.,* 15 Wn. App. 379, 550 P.2d 71 (1976).

As stated in *Harris v. Burnett,* 12 Wn. App. 833, 843, 532 P.2d 1165 (1975), citing *Heitfeld v. Benevolent & Protective Order of Keglers,* 36 Wn.2d 685, 320 P.2d 655, 18 A.L.R.2d 983 (1950):

When an instruction to be given by the trial court is a correct statement of the law but is objected to as too broad or as insufficiently specific under the evidence, the

objecting party must propose a proper instruction on the subject. Reversible error is not present unless the preferable instruction has been submitted and has been refused.

Defendants are precluded from raising an objection to instruction No. 7, on a theory which was not presented to the trial court for its consideration. Such new theory shall not be considered by this court. *Commercial Credit Corp. v. Wollgast,* 11 Wn. App. 117, 126, 521 P.2d 1191 (1974).

Reversed and remanded.

ANDERSEN, A.C.J., and CALLOW, J., concur.

Reconsideration denied November 16, 1978.

Review granted by Supreme Court March 2, 1979.