[No. 31066-6-I.    Division One.    October 25, 1993.]

SEA-VAN INVESTMENTS ASSOCIATES, *Appellant*, v. MARVIN HAMILTON, ET AL, *Respondents*.

*Jennifer M. Coughlin,* for appellant.

*Michael A. Winslow,* for respondents.

SCHOLFIELD, J. — Sea-Van Investments Associates, a Washington partnership, appeals dismissal of its contract claim against Marvin and Larona Hamilton and Clare and Virginia Hellyer, arguing that the trial court erred in concluding that letters between the parties did not constitute a legally enforceable contract for the sale of real property. We reverse and remand.

## FACTS

The Hamiltons and Hellyers separately owned two 10-acre undeveloped parcels east of Mt. Vernon. In March of 1989, Paul Krefting, on behalf of Sea-Van, approached the owners about buying the parcels. The initial letters expressing interest located the parcels on a map and identified them by section, township, and range numbers.

In April 1989, Sea-Van submitted a written offer to purchase both properties for $1,000 an acre. The offer was rejected. The Hellyers subsequently authorized Mr. Hamilton to negotiate with Mr. Krefting on their behalf. Following a phone call between the parties, Mr. Krefting made a written

offer to purchase the parcels. The September 11, 1989, letter stated:

> On behalf of Sea-Van Investments Assoc., I am please[d] to make the following offer for the 20 acres owned by you and Clare Hellyer in Section 27, southeast Mt. Vernon:
> Two Options:
> A. *$3,000 per acre on terms*: 20% down, balance on [an] interest only two-year note at 10% interest p.a.; Buyer and Seller split closing costs. Deed of Trust on closing.
> B. *$2,500 per acre cash* on closing; Buyer pays all closing costs.
> Both options are subject to both 10 acre parcels closing together and to proof of clear title by the Sellers.
> Please consider this offer valid until September 15, 1989.

Two days later, on September 13, Mr. Hamilton responded to Mr. Krefting's letter. The letter (quoted here without grammar and spelling corrections) stated:

> This letter is to inform you Mr Hellyer and myself do except your offer (A) of $3,000.00 per acre for two 10 acre parcles of land East of Mt Vernon.
> Terms 20% on closing, balance on a interest only two year note at 10% interest paid quarterly.
> On advice from my accountant I donot want closing to accure on my parcel until sometime after the 1st of the year 1990. Mr. Hellyer on the other hand has indicated to me they wish to close sooner.

After receiving the September 13 acceptance, Sea-Van started the closing process by ordering title policies for the two parcels. The title commitment on the Hellyer parcel indicated it was owned by Mr. Hellyer and a David Syre, and that there was a $60,595 judgment in favor of a bank. Mr. Krefting called the Hellyers about the title problem, stating he could not purchase the property because it was encumbered.

Until Mr. Krefting called, the Hellyers believed they were the sole owners of the property. They informed Mr. Krefting they believed title could be cleared with respect to removing Mr. Syre's name, but that they did not have the resources to remove the judgment for $60,595. Mr. Hellyer testified in his deposition that until the title problems arose, he understood

that he had a deal to sell the property on the terms set forth in the September 13 letter. Objection to this testimony was sustained by the trial court.

Mr. Hamilton told Mr. Krefting that he did not want to close until the Hellyers closed because they wanted to sell the parcels together. Mr. Krefting continued to call the Hellyers to check on their progress, and also offered legal assistance to get the title cleared. Mrs. Hellyer testified that she told Mr. Krefting that the title problems would be cleared "very soon" or "any day", and that she told him this "[p]robably many times".

On February 28, 1990, Mr. Hamilton notified Sea-Van that they were not willing to sell the property on the terms set forth in the September 1989 correspondence. The Hamiltons and Hellyers subsequently offered to sell Sea-Van an option to purchase the property for $25,000 per acre. Sea-Van refused, and this lawsuit ensued.

The legal description of the parcels was never at issue between the parties. In their answer, the defendants admitted as correct the legal description described in the complaint. Counsel for defendants also stated at trial that there was "no argument" on the legal description.

At trial, Sea-Van sought specific performance. It also presented evidence to support an award of monetary damages based on the increased cost of completing its planned golf course development, in the middle of which are the Hamilton and Hellyer parcels.

At the close of the plaintiff's case, the trial court granted the defendants' motion to dismiss. The trial court determined that the September 11, 1989, letter did not constitute an enforceable contract, and entered conclusions of law to that effect.

■■ Our review is limited to determining whether the findings are supported by substantial evidence, and whether the findings support the trial court's conclusions of law and judgment. *Holland v. Boeing Co.*, 90 Wn.2d 384, 390-91, 583 P.2d 621 (1978). Sea-Van assigns error to findings of fact 15, 16, and 21. More accurately, findings 15, 16, and 21 are

conclusions of law, and are treated as such here, along with conclusions of law 1 through 7, to which appellants also assign error.[1]

## STATUTE OF FRAUDS

The statute of frauds requires certain contracts to be in writing, including those transferring an interest in real property. To comply with the statute, a contract

> must contain a description of the land sufficiently definite to locate it without recourse to oral testimony, or else it must contain a reference to another instrument which does contain a sufficient description.

*Bigelow v. Mood*, 56 Wn.2d 340, 341, 353 P.2d 429 (1960).

---

[1]Error is assigned to the following:

Finding of fact 15:

"[The September 11 and September 13, 1989, letters] do not contain all of the essential elements of a contract for the sale of real property."

Finding of fact 16:

"The letter of September 11, 1989 . . . contemplated a promissory note, and the necessary terms of such note were not set forth or agreed to."

Finding of fact 21:

"[The September letters] do not reflect material terms upon which the parties would finally agree."

Conclusion of law 1:

"The parties did not agree on all the necessary material terms to create a contract for the sale of land."

Conclusion of law 2:

"The minds of the parties did not meet with respect to all of the essential elements of a contract for the sale of land."

Conclusion of law 3:

"[The September letters] did not address all material and essential terms of a contract for the sale of real property."

Conclusion of law 4:

"[The September letters] did not contain all the necessary terms to be agreed upon to form a binding contract between the parties for the sale of real property."

Conclusion of law 5:

"[The September letters] were not sufficiently definite to create legal obligations between the parties."

Conclusion of law 6:

"The elements which are essential to a contract for the sale of land in an action for damages for breach were not addressed by [the September letters]."

Conclusion of law 7:

"The elements which are essential to a contract for the sale of land in an action for specific performance were not addressed by the correspondence between Paul Krefting and Marvin Hamilton."

Multiple writings may suffice, but they must embody all the material elements of the transaction." *Friedl v. Benson*, 25 Wn. App. 381, 387, 609 P.2d 449 (1980). Courts do not have the right to disregard the statute of frauds "except where it is necessary so to do in order to prevent a gross fraud from being practiced." *Granquist v. McKean*, 29 Wn.2d 440, 445, 187 P.2d 623 (1947).

A. Mutual Mistake or Scrivener's Error.

Sea-Van first argues that the letters constituting the contract may be reformed to include the full legal description.

While agreements containing an inadequate legal description of the property are void, *Berg v. Ting*, 68 Wn. App. 721, 727, 850 P.2d 1349 (1993), contracts can be reformed where there is a scrivener's error or mutual mistake. *Snyder v. Peterson*, 62 Wn. App. 522, 814 P.2d 1204 (1991). *Snyder* involved a deed of trust which contained an inadequate description of property, omitting the section, township, range numbers, and meridian. The court first determined that the error was a scrivener's error because the attorney who drafted the deed inadvertently omitted the necessary language. The court also found mutual mistake.

Mutual mistake occurs "[i]f the intention of the parties is identical at the time of the transaction, and the written agreement does not express that intention". *Tenco, Inc. v. Manning*, 59 Wn.2d 479, 483, 368 P.2d 372 (1962). " 'Until the memorandum document is made to say what the parties intended it to say, invocation of the Statute of Frauds is premature' ", *Tenco*, at 485 (quoting Shattuck, *Contracts in Washington, 1937-1957: Part II*, 34 Wash. L. Rev. 345, 360-61 (1959)). *See also Maxwell v. Maxwell*, 12 Wn.2d 589, 593, 123 P.2d 335 (1942) ("[W]here both parties have an identical intention . . . and a writing executed by them is materially at variance with such intention, a court of equity will reform the writing so that it shall express their intention.") The *Snyder* court concluded:

> In light of the parties' intent, the fact that the agreement did not express that intent, and the case law allowing reformation

upon proof of a mutual mistake, we decline to reverse the trial court's decision allowing reformation.

*Snyder*, at 528.

In *Williams v. Fulton*, 30 Wn. App. 173, 632 P.2d 920, *review denied*, 96 Wn.2d 1017 (1981), the purchasers under an earnest money agreement sought specific performance. No legal description of the seller's life estate in her home or the 20 acres to which she was to have access was included in the agreement. The Court of Appeals affirmed the seller's summary judgment, holding that the statute of frauds was not satisfied:

> Although we recognize that a legal description of property may be reformed if a mutual mistake is established, a mutual mistake occurs only if the intentions of the parties were identical at the time of the transaction, and the written agreement did not express those intentions. *Bergstrom v. Olson*, 39 Wn.2d 536, 236 P.2d 1052 (1951). Reformation is not appropriate, however, if the agreement expresses the intent of the parties, but the legal description is merely incomplete. 2 A. Corbin, *Contracts* § 340 (1950).
>
> The agreement in this case includes the addendum, which clearly indicates the parties' intent to reserve a life estate and access to 20 acres. Thus, the written agreement does express the parties' intentions and no mutual mistake has occurred. While the documents subsequently attached to the earnest money agreement fail to mention the life estate or 20 acres, this fact merely renders the description insufficient. Consequently, reformation is not appropriate.

(Footnotes omitted.) *Williams*, at 176-77.

■ In the present case, the legal description appears to be merely incomplete, and thus reformation is not appropriate. No mistake occurred, at least not one in the usual sense of the term.[2] Certainly Sea-Van made a tactical drafting "mistake" in omitting the complete description from its offer, but we find this cannot constitute a mistake in the sense of an erroneous description meriting reformation of the contract.

---

[2]"A mistake is a belief not in accord with the facts." *Simonson v. Fendell*, 101 Wn.2d 88, 91,.675 P.2d 1218 (1984) (citing Restatement (Second) of Contracts § 151 (1981)). The property descriptions in the September letters expressed no belief contrary to fact.

## B. Judicial Admission Exception to the Statute of Frauds.

Generally, a party raising a statute of frauds defense against an inadequate legal description disputes the description, or lack of legal description, of the property. For example, in *Ecolite Mfg. Co. v. R.A. Hanson Co.*, 43 Wn. App. 267, 716 P.2d 937 (1986), two parties executed earnest money agreements with sketches of the property attached and an understanding that the subject property would be surveyed. The dimensions of the property were listed as "approximate". The purchasers sued for specific performance. The court held at page 270 that the description of the property was inadequate and the contract unenforceable, citing *Howell v. Inland Empire Paper Co.*, 28 Wn. App. 494, 495-96, 624 P.2d 739 (property located merely as portions of various tracts deemed insufficiently described), *review denied*, 95 Wn.2d 1021 (1981).

In the present case, the property in the September 11 letter was described as "the 20 acres owned by you and Clare Hellyer in Section 27, southeast Mt. Vernon"; and in the September 13 letter as "two 10 acre parcles [*sic*] of land East of Mt[.] Vernon." While the parcels have definite boundaries, unlike those in *Ecolite* and *Howell*, neither description by itself is sufficiently definite to locate the parcels without recourse to oral testimony, and neither contains a reference to another document which does contain a sufficient description.

However, *Ecolite* and *Howell* are distinguishable from the present case in another, more crucial way. The defendants admitted the legal descriptions of the parcels in court documents, thus conclusively satisfying the question of whether they had in mind identical parcels of land.[3] In addition to the written admission in defendants' answer, counsel for defendants stated to the trial court that there was "no argument" on the legal descriptions.

---

[3]Paragraph 6 of the Sea-Van complaint stated that Sea-Van entered into negotiations with the Hellyers and the Hamiltons for "the following two 10 acre parcels of land, which are legally described below . . .". The legal descriptions followed in full. The defendants' answer admitted Sea-Van's legal descriptions in paragraph 6.

██ Once a legal description is alleged and admitted in court documents, as here, the identity of the properties is unquestionable and can no longer be an issue of law. Moreover, the trial court may proceed "without recourse to oral testimony", one of the prime tests of whether the statute of frauds has been complied with. *Bigelow*, 56 Wn.2d at 341. While the statute of frauds generally has to be met at the time of the formation of the contract, we conclude that in circumstances where the property description is admitted to or stipulated, a party may not hide behind the statute of frauds by claiming an insufficient description in the contract. If a party were allowed to do so, the statute of frauds might well further a fraud rather than prevent one.[4]

Our holding is supported by case law. In *Powers v. Hastings*, 20 Wn. App. 837, 582 P.2d 897 (1978), *aff'd*, 93 Wn.2d 709, 612 P.2d 371 (1980), the court held that the statute of frauds did not bar enforcement of an unwritten option agreement because the testimony of both parties as to the existence of the lease-option removed any uncertainty and the potential for fraud. The court at pages 841-42 quoted from 2 A. Corbin, *Contracts* § 498, at 683 (1950):

> There are few, if any, specific and uniform requirements [for satisfying the statute of frauds]. . . . A complete admission in court by the party to be charged should dispense with the necessity of any writing whatever.

(Italics omitted.) The *Powers* court concluded:

> [T]he testimony of defendant Hastings in open court as to the details of the oral lease with option to purchase constitutes sufficient "memoranda" or "writings" to satisfy the statute of frauds, for we view recorded court testimony as equivalent to signed depositions.

*Powers*, at 846. The court also noted that because the purpose of the statute of frauds is to prevent fraud rather than perpetuate it, courts are "empowered to disregard the statute when necessary to prevent a gross fraud from being prac-

---

[4]We note a similar approach with respect to the statute of frauds for the sale of goods under the Uniform Commercial Code. A contract is valid "if the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract for sale was made . . .". RCW 62A.2-201(3)(b).

ticed." *Powers*, at 842 (citing *Granquist v. McKean*, 29 Wn.2d 440, 187 P.2d 623 (1947)). The Supreme Court affirmed the decision, but on the alternative grounds that part performance of an agreement to purchase real estate removed the agreement from operation by the statute of frauds. *Powers v. Hastings*, 93 Wn.2d 709, 612 P.2d 371 (1980).[5]

Courts in other jurisdictions have come to the same conclusion as the Court of Appeals in *Powers*. For example, in *Timberlake v. Heflin*, 180 W. Va. 644, 379 S.E.2d 149 (1989), the defendant asserted a statute of frauds defense against her former husband's suit for specific performance of a parol contract to transfer her interest in a jointly owned home. The court stated:

> We recognize, as have other courts, that a pleading may, in appropriate circumstances, be sufficient to take a parol contract out of the statute of frauds. In a related line of cases, representative of the modern trend, courts have crafted a "judicial admission" exception to the statute of frauds.
>
> These cases hold that any admission of a contract made in the course of judicial proceedings will render the statute of frauds inoperative. The "judicial admission" exception is read broadly to include even parol admissions in depositions or in open court. This result is said to be in harmony with the policy that underlies the statute of frauds: Its purpose is to prevent the fraudulent enforcement of unmade contracts, not the legitimate enforcement of contracts that were in fact made. 2 A. Corbin, *Corbin on Contracts* § 498 (1950 & 1984 Supp.).

(Footnote and citations omitted.) *Timberlake*, at 647-48. In concluding that the statute of frauds was satisfied, the court relied on documents filed in the previous divorce proceeding, that is, Ms. Heflin's divorce complaint and a signed affidavit affirming the agreement to transfer her interest in the property.

In accord with the reasoning of the Court of Appeals decision in *Powers* and the rationale in *Timberlake*, we find that the statute of frauds requirement of a full legal description

---

[5]*See also Klinke v. Famous Recipe Fried Chicken*, 94 Wn.2d 255, 616 P.2d 644 (1980) (a party may not defend on the statute of frauds if that party has breached his oral promise to reduce a contract to writing when the other party relied on the promise to his detriment).

within a contract for the sale of real property need not be met where the party claiming statute of frauds protection has admitted in court documents the legal description of the property.

### MEETING OF THE MINDS

The defendants' response letter of September 13 changed two of the terms of the offer. It asked for interest to be paid quarterly, and the closing to occur at different times rather than together. The respondents contend that this response letter was a counteroffer, the new terms of which were not explicitly accepted by Sea-Van.

■ We find that the change in the acceptance letter to quarterly interest represents a minimal change, and a reasonable closing date may be implied where a contract is unclear. *Turner v. Gunderson*, 60 Wn. App. 696, 703, 807 P.2d 370, *review denied*, 117 Wn.2d 1013 (1991). Thus, the changes to the contract introduced by the September 13 letter are insufficient for a finding as a matter of law that the parties did not have a meeting of the minds. Other silences in the contract, *e.g.*, which party is to pay taxes and assessments during the 2-year term and the type of deed to be used, are not essential terms that must be spelled out in the contract. *See Valley Garage, Inc. v. Nyseth*, 4 Wn. App. 316, 481 P.2d 17 (1971).

### TRIAL COURT'S EXCLUSION OF EVIDENCE

Mr. Hellyer had testified in a deposition that he understood he had a deal to sell the property on the terms set forth in the September 13 letter. At trial, the court sustained defendants' objection to the following question:

> If title problems hadn't appeared on the property, would you have been willing to close the deal on the terms in the September letter sometime in October of 1989?

In sustaining the objection, the court said:

> There is some lack of definiteness in . . . the contract plaintiff contends was in existence. So how can this man answer the question . . . when all the other terms and conditions weren't set forth[?]

The court's reasoning appears based on there being no "deal" yet proved.

■ Counsel's question was designed to elicit Mr. Hellyer's state of mind at the time of the correspondence, not his opinion as to whether there was a legally valid contract. An essential question at trial and on appeal is whether there was a meeting of the minds. We find the question relevant and probative.

The trial court dismissed the plaintiff's case before the defendants had an opportunity to put on their case. We find the dismissal to be in error, and we reverse and remand for further proceedings.

GROSSE and AGID, JJ., concur.

Review granted at 123 Wn.2d 1025 (1994).