945 P.2d 1137 (1997)
88 Wash.App. 669
Rolla W. HALBERT, Jr. and Lynne M. Halbert, his wife, Appellants,
v.
Helen FORNEY, individually and as Executor or Administrator of the Estate of her mother, Respondent.
No. 38010-9-I.
Court of Appeals of Washington, Division 1.
July 28, 1997.
Publication Ordered September 2, 1997.
Reconsideration Denied October 14, 1997.
*1138 Laurie Marie Halbert, North Amherst, MA, Derek A. Mann, for Appellants.
Deana Ann Pollard, Kenneth Harry Davidson, Davidson Czeisler & Kilpatric, Kirkland, for Respondent.
ELLINGTON, Judge.
Rolla and Lynne Halbert and Helen Forney executed an earnest money agreement for the Halberts to purchase Forney's property. Forney refused to honor the agreement. Conceding that the property description did not comply with the statute of frauds, the Halberts brought a declaratory judgment action to reform and enforce the agreement. The trial court granted summary judgment to Forney. We affirm because the document cannot be reformed to correct what the parties knew was an incomplete legal description, and the agreement lacks other material terms in any event.

Facts
On June 26, 1995, Forney and the Halberts executed an earnest money agreement for the sale of property described as "7522 124th Pl NE Kirkland, Wa 98033[.]" The Halberts promised to purchase the property for $140,000, with $15,000 down, a 30-year amortization, and a 10-year balloon payment. The *1139 agreement did not describe how the debt was to be secured. With the handwritten portions underlined, these terms appear in the agreement as follows:
Kirkland, STATE OF Washington, RECEIVED OF Rolla & Lynne Halbert the sum of One Thousand and no/100 dollars dollars [sic] ($1,00000 ) as earnest money and part payment for the following described real estate, situated in Kirkland, County of King, State of Washington, described as (insert full legal description):
7522 124th Pl NE Kirkland, Wa 98033
.... which we have this day sold to Rolla & Lynne Halbert (Purchaser) for the total purchase price of $140,000 Dollars ($ 140,000 ); balance of purchase price to be paid as follows:
 $15,000 down, Contract
 of $125,000, 30 yr
 amortization, with 10 yr balloon
with interest on deferred payments at the rate of 7 ¼% percent per annum until paid, the same to be secured by .
The agreement outlined the manner in which Forney would furnish an abstract of title or a title insurance report and stated that the Halberts would be given possession of the real estate on July 22, 1995. Forney never provided an abstract of title or a title insurance report. Instead, she attempted to return the earnest money five days after she accepted it.
The Halberts filed this suit, asking the court to reform the contract to incorporate an adequate property description and to order Forney to convey good title and possession of the property. Alternatively, the Halberts sought to recover consequential damages.
Forney moved for summary judgment, contending that the contract was unenforceable because it violated the statute of frauds and did not include several material terms, such as how the debt was to be secured, the procedure for declaring forfeiture, and the time and place for monthly payments.
The Halberts conceded that the property description was inadequate, but argued that it could be reformed under the doctrine of mutual mistake, which occurred when all parties assented to using the street address to describe the property because a complete legal description was not readily available.
The court granted Forney summary judgment, ruling that the Halberts were entitled to neither specific performance nor damages.

Discussion
By asking the court to reform the contract, the Halberts implicitly concede that the property description offends the statute of frauds. Their concession is correct, because to comply with the statute, conveyances of land must contain a description of the land that is sufficiently definite to locate it without recourse to oral testimony. Berg v. Ting, 125 Wash.2d 544, 551, 886 P.2d 564 (1995); RCW 64.04.010; RCW 64.04.020. The Supreme Court has held that street addresses, even when coupled with townships and counties, are insufficient to comply with the statute of frauds. Martin v. Seigel, 35 Wash.2d 223, 226-29, 212 P.2d 107 (1949). Instead, a valid description of platted property must generally include the correct lot number, block number, and addition. See Tenco, Inc. v. Manning, 59 Wash.2d 479, 484-85, 368 P.2d 372 (1962). Thus, the principal question on appeal is whether as a matter of law the court erred in granting summary judgment because the agreement can be reformed to comply with the statute of frauds.
The standard for review of a summary judgment order is settled. Such an order is proper only if there are no issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). This court engages in the same inquiry as the trial court and only considers evidence and issues raised below. Wash. Fed'n of State Employees v. Fin. Mgmnt., 121 Wash.2d 152, 157, 849 P.2d 1201 (1993); RAP 9.12.
The general rule in Washington is that an inadequate legal description is not subject to reformation. See, e.g., Snyder v. Peterson, 62 Wash.App. 522, 525-26, 814 P.2d 1204 (1991). Reformation is available, however, in circumstances where the inadequate description resulted from a scrivener's error *1140 or because of a mutual mistake. See, e.g., Berg, 125 Wash.2d at 553-54, 886 P.2d 564. In such cases, the document should not be tested for compliance with the statute of frauds until the document is reformed to reflect the parties' intent. Tenco, 59 Wash.2d at 485, 368 P.2d 372.
In Snyder, this court held that scrivener error allowed reformation of a deed in which the legal description lacked the section, township, range numbers, and meridian of a parcel because of their inadvertent omission by the attorney who drafted the deed. Snyder, 62 Wash.App. at 526-27, 814 P.2d 1204. This case is unlike Snyder, however, because here the parties did not adopt the inadvertent omission of a scribe, but instead agreed to use the street address in lieu of a complete legal description. The document thus reads exactly as the parties intended it to read. In such a case, the doctrine of scrivener error is inapplicable.
The Halberts contend, however, that the doctrine of mutual mistake allows reformation. A mutual mistake has occurred when the parties, although sharing an identical intent when they formed a written document, did not express that intent in the document. Snyder, 62 Wash.App. at 527, 814 P.2d 1204. The rationale is that, but for the mutual mistake, the parties would have executed the reformed contract. See Tenco, 59 Wash.2d at 485, 368 P.2d 372.
The parameters of a mutual mistake for reformation purposes are not explicitly defined by our case law. The Supreme Court has, however, adopted the Restatement's definition of mistake, which is "a belief not in accord with the facts." Simonson v. Fendell, 101 Wash.2d 88, 91, 675 P.2d 1218 (1984) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 151 (1981)). The Restatement recognizes that such mistakes can include a misunderstanding of the law, since the law in existence at the time of the making of the contract is part of the total state of facts at that time.[1] The mutual mistake doctrine may not be invoked to correct knowing errors of parties, however, because if such errors were always corrected, the statute of frauds would be eviscerated.[2]See generally Arthur Linton Corbin, CORBIN ON CONTRACTS § 340 at 194 (1950); accord Sea-Van Inv. Assocs. v. Hamilton, 71 Wash.App. 537, 543 n. 2, 861 P.2d 485 and accompanying text, 71 Wash.App. 537, 861 P.2d 485 (1993), rev'd on other grounds, 125 Wash.2d 120, 881 P.2d 1035 (1994). In fact, the Restatement contains an illustration demonstrating that reformation cannot be invoked to supply a term the parties knowingly omitted, although unaware of the legal consequence[3]. Reformation is not appropriate where, as here, "the agreement expresses the intent of the parties, but the legal description is incomplete." See Sea-Van, 71 Wash.App. at 543, 861 P.2d 485 (quoting Williams v. Fulton, 30 Wash.App. 173, 176-77, 632 P.2d 920, rev. denied, 96 Wash.2d 1017 (1981)). The Restatement disapproves of reforming instruments like the one at issue here.
This rule is well-founded, for if instruments such as this were routinely reformed, parties would have no incentive to include a proper legal description in any *1141 instruments purporting to convey real property. Enforcement of such agreements would effectively nullify the statute of frauds and involve the courts in precisely the "recourse to oral testimony"[4] the statute seeks to avoid. We have no authority to create a holding that leads to such a result. The Supreme Court's 1949 holding still controls: "[I]t is fair and just to require people dealing with real estate to properly and adequately describe it, so that courts may not be compelled to resort to extrinsic evidence in order to find out what was in the minds of the contracting parties." Martin, 35 Wash.2d at 228, 212 P.2d 107; see RCW 64.04.010; RCW 64.04.020.
The Halberts nevertheless argue that reformation should be invoked here on equitable grounds, contending that Forney knew the street address was legally defective. See Gammel v. Diethelm, 59 Wash.2d 504, 507-08, 368 P.2d 718 (1962). There is nothing in the record that supports this theory. Instead, the record only demonstrates that the parties, none of whom is alleged to be well-versed in the law of real estate, drafted the agreement together and opted to use only a street address. Halberts claim that Forney knew the street address to be legally inadequate, but represented it as adequate. This claim is based entirely on Lynne Halbert's declaration that "Forney did not have the legal description, but said that the address would do." Nothing in this statement supports an inference that Forney knew the address would not "do." This evidence is insufficient to raise a question of material fact as to fraud. The trial court therefore correctly denied reformation.
Further, the agreement is unenforceable because it lacks numerous material terms. See Sea-Van, 125 Wash.2d at 127-29, 881 P.2d 1035. The vagueness of the agreement is well demonstrated by the sentence fragment: "contract of $125,000," which seemingly anticipates a second contract that would necessarily include numerous terms to which the parties never agreed. Contemplation of such a second contract is enough to render the earnest money agreement unenforceable. See Hubbell v. Ward, 40 Wash.2d 779, 246 P.2d 468 (1952). The Halberts deny that a second agreement was anticipated, but if the earnest money agreement represented the only contract, numerous other material terms are missing. The agreement makes no provision for declaring forfeiture, fails to specify the type of deed to be supplied, makes no allocation of risk of damage or destruction, requires interest but fails to specify any payment terms, and makes no provision regarding utilities, taxes, repairs, capital improvements, or indemnification.[5] In short, the agreement fails to satisfy the requirements for formation of a contract for the sale of land. See Sea-Van, 125 Wash.2d at 128, 881 P.2d 1035.[6] What the Supreme Court reiterated in Sea-Van is apropos here: "[N]egotiation, not litigation, is the proper method to agree upon these vital terms."
The trial court did not err in finding the agreement unenforceable.
Affirmed.
BAKER, C.J., and GROSSE, J., concur.
NOTES
[1] The Restatement provides:

b. Facts include law. The rules stated in this Chapter do not draw the distinction that is sometimes made between "fact" and "law." They treat the law in existence at the time of the making of the contract as part of the total state of facts at that time. A party's erroneous belief with respect to the law, as found in statute, regulation, judicial decision, or elsewhere, or with respect to the legal consequences of [that party's] acts, may, therefore, come within these rules.
RESTATEMENT (SECOND) OF CONTRACTS § 151 cmt. b (1981).
[2] The Halberts rely on Snyder for the proposition that mutual mistake can be invoked to insert a legally effective intent into the agreement. The Snyder court analyzed the doctrine of mutual mistake only after concluding that scrivener's error provided a basis for reformation. Snyder, 62 Wash.App. at 526-28, 814 P.2d 1204. Thus, the discussion of mutual mistake was dicta and was intertwined with the discussion of scrivener's error.
[3] In relevant part, the Restatement recites:

4. A agrees to sell and B to buy a tract of land for $100,000. They prepare and sign a document that does not, as they both realize, contain a price, although neither party is aware of the legal consequences of this omission. Because, apart from the Statute of Frauds, reformation would not otherwise be appropriate, a court will not, at the request of either A or B, reform the writing to include the price.
RESTATEMENT (SECOND) OF CONTRACTS § 156 cmt. a, illus. 4 (1981).
[4] See Berg, 125 Wash.2d at 551, 886 P.2d 564.
[5] Like the provisions relating to the type of deed, the agreement contained a space to denote the amount of insurance. This space was left blank. Relevant portions of the agreement read as follows:

Owner agrees to deliver a good and sufficient deed or contract of sale ...; Owner agrees to have executed and deliver a deed conveying, or contract agreeing to convey, said premises upon the financing being made as above specified.... Purchaser agrees to keep the buildings on said premises, if any, insured in the sum of $ [.]
[6] The Halberts rely on Hubbell, 40 Wash.2d at 782-83, 246 P.2d 468 and Hedges v. Hurd, 47 Wash.2d 683, 289 P.2d 706 (1955) for the essential elements of a binding contract for real estate, and assert that Forney did not cite Sea-Van to the trial court and should not be permitted to cite it on appeal. Sea-Van, however, is merely cited as additional authority for the arguments made below. Whether or not Sea-Van was brought to the attention of the trial court, it is controlling authority on the question of the material terms of a real estate contract. See Sea-Van, 125 Wash.2d at 128, 881 P.2d 1035; see also Kruse v. Hemp, 121 Wash.2d 715, 722, 853 P.2d 1373 (1993). Moreover, the shorter lists of essential elements found in Hubbell and in Hedges are also not satisfied here.