[No. 28565.    Department One.    March 4, 1942.]

ELIZABETH MAXWELL, *as Administratrix, Appellant,* v.
MELVIN MAXWELL *et al., Respondents.*[1]

[1]Reported in 123 P. (2d) 335.

*John W. Dobson* and *Rummens & Griffin,* for appellant.

*Allen & Carey* (*Sanford Skidmore,* of counsel), for respondents.

DRIVER, J.—Plaintiff, as administratrix of the estate of her deceased husband, James H. Maxwell, brought this action seeking the cancellation or, in the alternative, correction of a deed to the defendant Melvin Maxwell, on the ground that it misdescribed the real property intended to be conveyed. The defendants, by their answer, admitted that the description in the deed was defective and asked that it be corrected, but disagreed with the plaintiff as to the extent of land the parties intended the deed to cover. A trial to the court resulted in a judgment directing its correction in accordance with the defendants' theory and quieting title to the real property in them. Plaintiff appeals. For convenience, Melvin Maxwell will be re-

ferred to in this opinion as if he were the only respondent.

The land in controversy is a portion of a larger tract which the decedent, Charles H. Maxwell, apparently had acquired when he and his brother (respondent's father), by agreement, divided the estate of their mother between them, but the record is not altogether clear on that point. The tract is situated about seven miles from Renton, on a county road leading toward Enumclaw. In March, 1917, shortly after her marriage to Mr. Maxwell, appellant moved upon this property and since that time has continuously resided there. The deed from James H. Maxwell and appellant to respondent was executed in April, 1937. Respondent was then contemplating marriage, and his uncle and appellant gave him the deed to the land as a wedding present. James H. Maxwell died in August, 1938, and the following March, when respondent had a survey made and claimed possession of the tract, a dispute arose between him and appellant as to the extent of the gift. In February, 1940, appellant instituted the present action.

The real property is described in the deed as follows:

"Beginning at the Northwest corner of the South Half of Government Lot Six (6), thence South, along the West line thereof, 348.5 feet; thence North Easterly 281. feet, more or less, to the County Road, at a point *18515* feet South Easterly, measured along said Road, from the North Line of the South half of said Lot Six; thence *North Easterly*, along said Road, 185.5 feet —thence West 77.5 feet to the place of beginning, all in Sec. 32, Twp. 23, No. Range 6 EWM."

Respondent claims that the foregoing description requires but two corrections, namely, the changing of the italicized figure "*18515*" to "185.5," and the substitution of the word "Northwesterly" for the italicized words "*North Easterly*." Appellant, however, main-

tains that, to conform to the intention of the parties, the description should read:

"That portion of the following described tract of land, Beginning at the Northwest corner of the South Half of Government Lot Six (6), Sec. 32, Twp. 23 North Range 6 thence South, along the West line thereof 348.5 feet; thence Northeasterly 281 feet more or less, to County Road at a point *185.5* feet Southeasterly measured along the Southwesterly line of said road from the North line of the South half of said Lot Six (6), thence *Northwesterly* along said Southwesterly line of said County road 185.5 feet thence West 77.5 feet to the place of beginning; described as follows: Beginning at the most Easterly corner of said tract thence Northwesterly along the Southwesterly line of County road 40 feet thence Southwesterly parallel to the Southeasterly line of the above described tract a distance of 133 feet, thence Southerly 55 feet to said Southeasterly line to a point 171 feet more or less Southwesterly from the point of beginning, thence Northeasterly along said Southeasterly line 172 feet more or less to the point of beginning."

Appellant and respondent are in agreement, as a comparison of this description with the one in the deed will disclose, that the figure *"18515"* should have been "185.5," and that the next to the last course in the deed description should have been "Northwesterly" instead of *"North Easterly."* Uncorrected, the calls, manifestly, do not close, but when the two corrections are made, then the calls close and delineate a quadrilateral parcel having a frontage of 185.5 feet on the county road. This, says the respondent, is the tract his uncle intended to give him. Appellant contends, however, that the parties intended to pass title to a much smaller parcel having a frontage of only forty feet on the county road and lying within the boundaries of the larger tract which respondent claims.

Appellant thus seeks not only to correct manifest errors in the deed description, but also to ma-

terially alter it by the addition of a whole new series of calls. She does not charge respondent with fraud or other inequitable conduct with reference to the execution of the deed, and if she is to have reformation of the instrument, it must be on the ground of mutual mistake of the parties thereto. 4 Pomeroy's Equity Jurisprudence (5th ed.), p. 1000, § 1376.

■ As a general rule, where both parties have an identical intention as to the terms to be embodied in a proposed written conveyance or agreement, and a writing executed by them is materially at variance with such intention, a court of equity will reform the writing so that it shall express their intention. 2 Restatement of the Law of Contracts, p. 968, § 504. See, also, *Moeller v. Schultz,* 11 Wn. (2d) 416, 119 P. (2d) 660, and cases therein cited. However, the party seeking reformation of a writing for mutual mistake must establish facts which will warrant the allowance of the remedy by clear and convincing evidence and not by a mere preponderance. 2 Restatement of the Law of Contracts, p. 981, § 511. *Vanasse v. Cavey,* 167 Wash. 238, 9 P. (2d) 60; *Carew, Shaw & Bernasconi v. General Casualty Co.,* 189 Wash. 329, 65 P. (2d) 689; *John Hancock Mutual Life Ins. Co. v. Agnew,* 1 Wn. (2d) 165, 95 P. (2d) 386. In the last cited case, p. 176, we said:

"The evidence as to the agreement the parties intended to make is conflicting. That is not sufficient. Reformation is a proper remedy where the parties have reached definite and explicit agreement, understood in the same sense by both, but by their mutual or common mistake, the written contract fails to express that agreement. . . .

"There is a direct conflict in the oral evidence upon the issue as to an agreement respecting the sale of the personal property subject to the lien for existing taxes. Where any doubt exists as to the intent of the parties, reformation will not be granted."

■ In the case at bar, the evidence is likewise conflicting. Appellant testified that respondent had come to see her husband the day before the deed was executed, and the proposed conveyance was discussed at that time in her presence. It was definitely understood, she said, that respondent was to get only the smaller forty-foot tract; that respondent told them his father had given him an adjoining sixty-foot strip fronting on the highway, and, if he received forty feet more from his uncle, he would build and operate a gasoline service station on the property. Appellant also pointed out that a hamburger stand, which she had operated during the summer season for a number of years, was situated on the larger tract which the respondent claimed (the dwelling house and other improvements were not so situated); and that the back line of such tract would come within nine paces of the "front approach" of her home, which stands on higher ground some distance back from the road. However, appellant admitted that she closed the hamburger stand in the fall of 1937 and did not open it again, although, as stated, respondent did not claim possession until March, 1939.

Several witnesses who lived or had places of business near appellant's home testified that, shortly before the deed was executed, respondent, in a number of different conversations, had told them that his uncle was giving him a forty-foot strip of land, which he intended to use, with an adjoining sixty feet which he would get from his father, to conduct a service station business. Respondent denied making any such statements. He testified that his uncle had intended to give him the larger tract and had pointed it out to him on the ground the day before the deed was executed. Also, it appeared by undisputed evidence that, while respondent's father did own a sixty-foot strip of land

adjoining the tract in controversy, he had not, up to the time of the trial, conveyed it to respondent.

The deed was drafted by a real estate agent at his office in Renton, and was signed and acknowledged there by James H. Maxwell, and by appellant. Respondent also was present. Appellant first testified, on cross-examination, that her husband gave the real property description to the real estate agent verbally "out of his mind, as far as I could see." Then she later stated that her husband and the respondent preceded her by a few minutes at the real estate office, and that the scrivener must have been given the description before she arrived, as the deed was already prepared when she got there. She stated also that, in the office, which consisted of one small room, within the hearing of everyone present, she had asked if " . . . that is 40 by 135?" and her husband had told her it was; and that there was some talk about respondent's opening a service station on the property. The scrivener, corroborating respondent, denied that any such statements were made in his presence. He testified that James H. Maxwell, the appellant, and respondent, all of whom he had known for several years, came into his office together; that they requested him to make out a deed, and "They gave me an old deed to copy from." He testified further:

"Q. On your typewriter where is the figure '1' or 'L' located with reference to the period? A. They are right side by side or one above the other. Q. In making out the deed there are two mistakes. A. Yes, I have seen the deed since I wrote it. There are two errors. Q. What are they? A. 18515 should have been 185.5. Q. And the other is? A. The word North-easterly,—it should be Northwesterly, it is going across the road, the railroad, so it could not have been a description at all. Any description must come back to its place of beginning."

The scrivener was then shown the description set forth in the complaint and claimed by appellant to be the proper one. He stated that it was not the description which had been given him to copy, and that he had never seen it before.

Clearly, appellant has failed to show mutual mistake of the parties by that degree of proof required by the stated rule, and is not entitled to reformation of the deed.

■ Respondent, on the other hand, we think, is entitled to the relief which the trial court granted him under a different rule, which is stated in paragraph IV, p. 15, of an annotation to *Detroit, Grand Haven & Mil. R. Co. v. Howland,* 246 Mich. 318, 224 N. W. 366, 68 A. L. R. 1, as follows:

"Where the description of land in a deed or mortgage is vague, uncertain, or indefinite, parol evidence is admissible to explain and remove the uncertainty, and to identify the property intended to be conveyed, thus giving effect to the intention of the parties to the instrument. Such evidence is not to vary or contradict the language of the writing, but is to make clear that which was uncertain, so far as this is possible without adding material terms to the writing. Accordingly it follows that, if the description of the land is so vague and indefinite that effect could not be given the instrument without writing new, material language into it, then parol evidence is not admissible. There must be language in the deed sufficient to serve as a pointer or a guide to the ascertainment of the location of the land. *The expression of the intention of the parties to the deed or mortgage must appear thereon; and it is the purpose of the parol evidence to bring to light this intention, but never to create it.*" (Italics ours.)

■ In support of the foregoing statement, the writer of the annotation cites cases from the United States supreme court, from the fifth circuit court of appeals, and from appellate courts of forty states.

Washington cases cited are: *Cook v. Hensler* (1910), 57 Wash. 392, 107 Pac. 178; *Konnerup v. Millspaugh* (1912), 70 Wash. 415, 126 Pac. 939. In the same annotation, at p. 38, this statement appears:

"Where the calls as specified in the instrument fail to close, parol evidence is usually allowed to explain the ambiguity and to identify the land intended to be conveyed."

■ Many of the cases, particularly the earlier ones, draw a distinction between latent and patent ambiguities in an instrument and announce that the former may be corrected by resort to parol evidence, but not the latter. With reference to this distinction the writer of the cited annotation, in his introductory paragraph, p. 5, states:

"The old classification of ambiguity into 'latent' and 'patent' still exists in many jurisdictions, but the rigidity of the rules defining these types has been weakened generally for over a half of a century. The modern tendency is to allow a liberal interpretation of the descriptions of land, and to uphold the validity of the deed, if in any way it is possible to arrive at the intention of the parties thereto. And that is the basis for the admissibility of parol evidence,—in order to enable the court to determine what was the intention of the parties to the instrument, as that intention is contained in the language of the writing."

In the case of *Fagan v. Walters,* 115 Wash. 454, 459, 197 Pac. 635, quoted with approval from 17 Cyc. 680, it was said:

" 'What is usually termed a patent ambiguity is such as exists or appears on the face of the writing itself. That portion of Lord Bacon's rule in which he states that an ambiguity of this character cannot be explained by parol has frequently been repeated by the courts as a correct exposition of the law; but it has also been subjected to much criticism. Thus it has been said that it is too general, and not of universal application, at least where the word "ambiguity" is

taken in its broad sense of doubtfulness, uncertainty, or double meaning. It is certainly not true that an ambiguity appearing on the face of the paper, if that alone be looked to, cannot be explained by parol, and the rule laid down by Lord Bacon that extrinsic evidence is not admissible to explain a patent ambiguity has never been acted upon in its widest extent, for there are to be found in the reports · *may* [many] cases where, although the ambiguity was such as should undoubtedly be designated as patent, if that term be taken in its broad sense, the courts have admitted evidence to explain it or to show the circumstances surrounding the transaction and the situation of the parties. In addition to this there *may be* [are many] cases flatly repudiating this part of the rule and expressly holding that a patent as well as a latent ambiguity may be explained by extrinsic evidence.

" 'The true rule with regard to patent ambiguities must be taken to be this: The patent ambiguity which cannot be explained by parol evidence is that which remains uncertain after the court has received evidence of the surrounding circumstances and collateral facts which are of such a nature as to throw light upon the intention of the parties. In other words and more generally speaking if the court, after placing itself in the situation in which the parties stood at the time of executing the instrument, and with full understanding of the force and import of the words, cannot definitely ascertain the meaning and intention of the parties from the language of the instrument thus illustrated, it is a case of incurable and hopeless uncertainty and the instrument is so far inoperative and void; and it cannot be sustained or rendered operative by the introduction of evidence which would necessarily have the effect of adding new terms to the writing.' "

In the case at bar, we think that the uncertainty or ambiguity in the deed was of the character which may be explained and rectified by resort to parol evidence. Disregarding entirely the testimony of respondent as to what land the parties intended should

be conveyed, it clearly appears from other evidence in the record that the ambiguity was due to the two inadvertent errors on the part of the scrivener, and that the correct real property description expressive of the intention of the parties can readily be determined from the instrument itself, considered in the light of the surrounding circumstances and the situation of the parties at the time the deed was executed.

Appellant contends that, due to certain admissions in the respondent's answer, the question of mutual mistake has been removed from the case, or, if it is applicable at all, it applies equally to both parties. This court, appellant maintains, has before it only the factual issue as to which party's proposed real property description should be adopted. In this connection, it should again be noted that the respondent seeks only to correct two errors in the description, while appellant would substitute an entirely different description in the deed.

Considered as a whole, and liberally construed, we think the answer sufficiently presented respondent's theory that the deed description was defective only as to the errors made by the scrivener, and did not constitute an admission that the description was incurably vague or ambiguous. In any event, the evidence in the record is sufficient to warrant application of the rule above cited with reference to the correction of an uncertain or indefinite land description in a deed, and the pleadings will, therefore, be regarded as amended to conform to the proof.

Respondent has called our attention to some inadvertent errors in the judgment of the trial court. In line nine of the first page of the judgment, as it appears in the transcript, the word "northwesterly" should be "northeasterly"; and, in line ten, the word "northeasterly" should be "northwesterly." In the

fourth and sixth lines of the real property description, which is also on the first page of the judgment, the figures "185.15" should be changed to read "185.5."

The cause is remanded, with direction to correct these errors, and the judgment is otherwise affirmed.

ROBINSON, C. J., MAIN, MILLARD, and STEINERT, JJ., concur.

[1]Reported in 123 P. (2d) 322.