[No. 47400–1.   En Banc.   October 1, 1981.]

THE CONTINENTAL INSURANCE COMPANY, *Respondent,* v. PACCAR, INC., *Petitioner.*

*Reed, McClure, Moceri & Thonn, P.S.,* by *William R. Hickman,* for petitioner.

*John H. Rayback,* for respondent.

*Dale B. Ramerman,* amicus curiae for petitioner.

WILLIAMS, J.—In this case an insured seeks review of a Court of Appeals decision holding that an "annual retained aggregate" liability in an insurance policy should not have been prorated when the insurer cancelled the policy before expiration of the annual period. *Continental Ins. Co. v. Paccar, Inc.,* 26 Wn. App. 850, 614 P.2d 675 (1980). We reverse.

In 1974, respondent Continental Insurance Company (Continental) issued Paccar, Inc. (Paccar), the petitioner, an insurance policy that commenced March 1, 1974, and that was effective "until cancelled." Under the policy, Paccar received $1 million in coverage per claim and $1 million in coverage in the aggregate for seven major areas of potential liability. Continental's liability was limited, how-

ever, by a self–retained limit (deductible) of $50,000 per claim and $500,000 in the aggregate (the "annual retained aggregate limit"). By its terms, the aggregate feature would only come into play after the insured had paid out $500,000 on 10 or more occurrences. Paccar's reason for seeking inclusion of an annual aggregate feature was apparently to protect against an unusually high number of losses, since Paccar contemplated that it could self–insure up to 10 occurrences at $50,000 per occurrence.

The policy provided for proration of premiums in the event of cancellation before the March 1 anniversary date, as required by RCW 48.18.290(4). However, the policy did not specify whether the annual retained aggregate limit was to be prorated in the event of cancellation before the anniversary date.

At all times during the events that gave rise to this litigation, Paccar maintained its own insurance department, but some of Paccar's insurance arrangements were handled through the brokerage firm of Marsh & McLennan, Inc. (Marsh). Marsh also acted as designated agent for Continental on the policy in question.

In the fall of 1975, the parties began discussing policy changes. In August of 1975, Marsh, apparently acting on behalf of Paccar, had notified Continental that it wished to have inserted in the policy a clause providing for proration of the annual retained aggregate if Continental elected to cancel the coverage before the anniversary date of the policy. Continental declined to agree to insertion of such a clause, explaining:

> We, here at Continental, believe that we would never take advantage of an insured because of policy terminology in the event in this case that we would be near reaching an aggregate because of losses.

Exhibit 31.

By March 1, 1976, both parties remained dissatisfied with the policy. Continental found the stated premiums unsatisfactory, while Paccar continued to seek an express provision relating to the proration of the annual retained

aggregate. The parties agreed to extend the coverage on a month–to–month basis, however, while they negotiated. Eventually it became clear that no resolution was in sight, and on April 30, 1976, Continental sent out notices of cancellation pursuant to the policy, cancelling the policy effective July 29, 1976.

A year later, Continental brought the present action seeking additional premium amounts from Paccar on the theory that the policy premium, which was based on annual sales, had been improperly computed. Paccar denied any further liability and counterclaimed on the theory that the annual retained aggregate should have been prorated. As to Paccar's counterclaim, the trial court found that the cancellation of the policy had created an ambiguity as to the effect of the annual self–retained aggregate limit and concluded that the ambiguity should be resolved against Continental by prorating the aggregate limit.

On appeal, Continental failed to prevail on its claim for additional premiums, and it has not sought review of the Court of Appeals decision on this issue. Paccar's petition addresses that portion of the Court of Appeals decision denying proration of the annual retained aggregate. *Continental Ins. Co. v. Paccar, Inc., supra.*

Although Paccar raises several subissues, the fundamental question is whether there should be proration when it was not expressly provided for in the original insurance policy. In concrete terms, the question is whether the deductible for the period March 1, 1976 to July 29, 1976 is $500,000 or $205,000.

Continental argues that the policy is unambiguous, that proration of premiums is expressly provided for, that proration of the aggregate is *not* provided for, and that this court should not write in a proration clause to protect Paccar from its own failure to obtain such a clause. This argument was persuasive to the Court of Appeals. The court reasoned that cancellation did not affect a claim that had already arisen under the policy's coverage. The court defined "'coverage'" as the "'assumption of risk of occur-

rence of the event insured against before its occurrence.'" *Continental Ins. Co.,* at 863, quoting from *Ryan v. Cuna Mut. Ins. Soc'y,* 84 Wn.2d 612, 615, 529 P.2d 7 (1974). Thus, the court concluded that Paccar "was afforded full 'coverage' at any one time up to the maximum policy limits, subject to the fulfillment of the self–retained aggregate limit." *Continental Ins. Co.,* at 864. The court found no ambiguity, and likewise agreed with Continental that proration of *premiums* was the sole remedy in the event of cancellation.

Paccar contends, however, that the court erred by failing to discern the difference between a patent and a latent ambiguity and by failing to recognize that the policy is latently ambiguous. In *Maxwell v. Maxwell,* 12 Wn.2d 589, 597–98, 123 P.2d 335 (1942), this court recognized that while a patent ambiguity must exist on the face of the document, a latent ambiguity exists when the language becomes doubtful only in light of proof of extrinsic or collateral circumstances. Paccar argues that cancellation of the policy in the middle of a coverage year provides just such a circumstance. *See also* 3A C.J.S. *Ambiguity* 410 (1973); 30 Am. Jur. 2d *Evidence* § 1073 (1967).

We think Paccar is correct in maintaining that a contract which is clear on its face is not necessarily unambiguous when extrinsic circumstances are considered. *Maxwell v. Maxwell, supra.* In this case, for example, the policy language was clear, and its interpretation unambiguous so long as the policy either remained in effect or was cancelled effective on an anniversary date. Once the extrinsic circumstance of cancellation during a coverage year occurred, however, an ambiguity became apparent: namely, which party should bear the risk revealed by early cancellation of the annual aggregate feature of the contract.

In answering this question, we think it helpful to understand the nature of the annual retained aggregate. The concept of time, specifically an *annual period,* was essential to the aggregate feature in this policy. The insured sought protection from a large loss on a single occurrence by

securing coverage for a loss above $50,000 on any one occurrence. To protect against a large number of occurrences (which would impair its self–insurance capacity), Paccar wanted a provision that afforded coverage for all losses, including any occurrences with losses under $50,000, once it had paid out a total of $500,000 in a given year.

Because the annual retained aggregate feature provided no coverage until the point in the policy year when at least 10 losses of $50,000 or more had occurred, Continental's risk of liability under the provision was not constant throughout the year. In setting the premium, the insurer would presumably estimate both the number of losses that would occur over the year and the amount the insured would have to pay under the retained loss provision over that year. The extra premium for the annual retained aggregate limit would be set at an amount the insurer believed would result in a profit. It is plain that such an insurer would have no exposure during the first part of the coverage year. To say, therefore, that the insured "was afforded full 'coverage' *at any one time*" (italics ours; *Continental Ins. Co.,* at 864) misperceives the nature of what Paccar was buying.

Paccar additionally contends that it violates sound public policy to permit an insurer the option to cancel a policy whenever it appears that the deductible limit is about to be exhausted. The consequences may be illustrated as follows: if during the 5–month period from March 1, 1976, until the termination date, July 29, 1976, there had been ten $50,000 events, Paccar would have paid the entire $500,000 liability, even though it had expected to spread this risk over 12 months. Its prorated premium of $95,195.38 would therefore purchase no aggregate protection at all for those 5 months, and the insurer could collect the full amount of the premium for the portion of the policy year when its exposure was the least. (The record does not disclose what losses, if any, occurred during the applicable period.)

Even if all of the above is conceded, Continental replies that Paccar specifically bargained for, but failed to procure,

a clause requiring proration of the annual aggregate. Continental fails to consider the time sequence of the negotiations over this clause. As we have noted, the record reveals that the parties began to discuss proration of the aggregate in the fall of 1975, the time during which several modifications to the policy were being considered. At that time, for the first time, Paccar sought inclusion of a clause providing for proration of the aggregate liability.

There is evidence, however, that neither party gave any thought whatever to the matter of proration of the aggregate during the discussions and drafting of the original policy which took effect on March 1, 1974. Indeed, it appears that annual aggregate coverage was a relatively novel concept at the time the agreement was concluded, and the matter of proration was simply not considered. The language of the policy terms was unambiguous. The original policy remained in effect through at least two extensions of time, until cancellation became effective on July 29, 1976. The only possible ambiguity which we perceive, therefore, was whether there was to be proration of the annual aggregate, and it is plain that neither party had even considered this question until long after the policy was drafted.[1] In the absence of any consideration of the matter by the parties, which of them must bear the risk of liability?

It is a fundamental rule that ambiguities in an insurance policy are to be construed in favor of the insured. *Shotwell v. Transamerica Title Ins. Co.*, 91 Wn.2d 161, 167, 588 P.2d 208 (1978); *Witherspoon v. St. Paul Fire & Marine Ins.*

---

[1]The record contains numerous references to the parties' good faith efforts to negotiate a satisfactory resolution of their differences in 1975 and early 1976. We make no contrary intimation, and we do not fully agree with the trial court that because Continental's *conduct* in cancelling the policy revealed the ambiguity, Continental should bear the risk. By that reasoning, if Paccar, not Continental, had cancelled the policy, then we would be compelled to impose the risk on Paccar. In practical terms, such a requirement would force both parties to continue the policy until the anniversary date, rather than cancel (as the policy clearly permitted) and incur the "blame" for creating the ambiguity. The issues, therefore, of (1) whose conduct caused the ambiguity to become apparent and (2) who should bear the risk are separate questions.

*Co.,* 86 Wn.2d 641, 650, 548 P.2d 302 (1976); *Dairyland Ins. Co. v. Ward,* 83 Wn.2d 353, 358, 517 P.2d 966 (1974). The reason for the rule is that insurance contracts are ordinarily prepared solely by the insurance company. 4 S. Williston, *Contracts* 764–65 (3d ed. 1961). Presumably the insurer, as drafter, is in a better position to prevent mistakes or ambiguities. 4 S. Williston, at 760.

Continental urged below that the trial court erred in refusing to admit its proffered evidence that Paccar was responsible for the policy language and that the parties were of equal bargaining power. If, as Continental contends, the court had admitted the evidence and found that Continental had not been solely responsible for the policy language, Continental argues that it makes no sense to apply the general rule against it, the insurer. *See Muench v. Oxley,* 90 Wn.2d 637, 646, 584 P.2d 939 (1978).

We are of the opinion that the rule of construing the policy against the insurer does not fit the circumstances of this case. Regardless of which party drafted the policy language, it is uncontested that neither party considered proration of the aggregate at the time they agreed on the unambiguous policy terms. It appears therefore that we must find another basis for placing the risk of liability.

■ As a matter of fairness, there is a persuasive policy basis for denying Continental's claim that Paccar should bear a $500,000 liability for 5 months' coverage when it purchased protection for 12 months. With any other provisions in an insurance policy, the chance that a given occurrence is covered is constant throughout the policy year. Hence midyear cancellation, with a proportionate reduction in premium, is fair to both parties. With the annual retained aggregate limit, however, the likelihood of an occurrence being covered is nothing at the beginning of the year and increases as the year progresses. Thus, if we were to agree with Continental, the effect would be that an insurer with a cancellation clause similar to the one in this case would be permitted to keep an eye on the claims as they mounted in a given year, and to cancel whenever it

appeared at any time during the annual period that the self–insured liability figure was about to be exceeded. While the record in this case amply demonstrates that Continental cancelled the policy for other reasons, the logic of its argument would permit it to cancel for the reason described above.

On the other hand, we discern no competing policy basis in law or equity which would have us place the burden on Paccar. In the difficult, and, we trust, novel circumstances of this case, we believe equity calls for proration of the annual retained aggregate liability.[2]

The Court of Appeals is reversed.

BRACHTENBACH, C.J., and ROSELLINI, STAFFORD, HICKS, and DORE, JJ., concur.

DOLLIVER, J. (dissenting)—The insurance policy provided for proration of premiums in the event of cancellation before the March 1 anniversary date, as required by RCW 48.18.290(4). It did not specify whether the annual retained aggregate limit was to be prorated in the event of cancellation before the anniversary date.

It is not uncommon that in some instances a lay person may easily be confused by a complex insurance policy,

> ". . . and as a result the insured generally makes a request for the kind of insurance he desires and then signs 'on the dotted line' upon a formidable appearing printed form with the provisions of which the average assured has slight, if any, acquaintance. . . ."

*Labberton v. General Cas. Co. of America,* 53 Wn.2d 180, 182–83, 332 P.2d 250 (1958). The insured in this case cannot be categorized as an average lay person. Paccar is an international manufacturing company maintaining its own insurance department, making additional insurance

---

[2]This disposition renders it unnecessary to consider Paccar's argument regarding whether ambiguity is a question of law or a question of fact. Likewise, we need not address Paccar's contention that the Court of Appeals erred in relying in part on nonlegal insurance textbooks in its decision.

arrangements with a brokerage firm. In this case we are dealing with two corporations who have engaged in an arm's length bargaining process.

The majority states at page 166 that:

> The only possible ambiguity which we perceive . . . was whether there was to be proration of the annual aggregate, and it is plain that neither party had even considered this question until long after the policy was drafted.

It would seem to me that if the parties did not include any language as to the proration of the annual retained aggregate then there would be no proration and thus no ambiguity.

Where language of an insurance policy is clear, there is no room for construction or determination of ambiguity. *Muench v. Oxley,* 90 Wn.2d 637, 584 P.2d 939 (1978). Plain language must not be disregarded. *Davis v. North Am. Accident Ins. Co.,* 42 Wn.2d 291, 254 P.2d 722 (1953). The Court of Appeals concluded that a court should not make a different contract for the parties under the guise of construing the contract. *Hodges v. Mutual Benefit Health & Accident Ass'n,* 15 Wn.2d 699, 131 P.2d 937 (1942). I agree.

Proration of the annual retained aggregate limit in the event of cancellation before the policy date was not specified in the policy; there is no ambiguity.

But the fact that there is no ambiguity and thus there should be no proration does not appear to be crucial to the majority. Rather, its holding for Paccar rests on its conclusion that ". . . equity calls for proration of the annual retained aggregate liability." If equity plays a part in this case, however, it calls for the court to hold not for Paccar, but for Continental.

General condition No. 11 of the policy states, in part:

> Cancellation. This policy may be cancelled by the insured named in Item I of the declarations [Paccar] by surrender thereof to the company [Continental] . . .

In the fall of 1975, the parties began discussing policy changes. In August of 1975, Paccar's brokerage firm (Marsh), acting on behalf of Paccar, notified Continental by

letter that it wished to have inserted in the policy, a clause providing for proration of the annual retained aggregate if Continental elected to cancel the coverage before the anniversary date of the policy. The letter stated:

> We would like to have inserted in the above policy, a clause providing for the pro–rating of the annual aggregate if the company elects to cancel . . .

According to exhibit 131, the agency agreement, Marsh possessed the full power and authority of an agent. Nonetheless, neither Marsh nor Paccar cancelled the insurance policy with Continental prior to the upcoming anniversary date on March 1, 1976. Marsh was aware of the proration problem in August of 1975. The law imputes to the principal, and charges it with all notice or knowledge relating to the subject matter of the agency which the agent acquires or obtains while acting as such agent and within the scope of his authority. *American Fidelity & Cas. Co. v. Backstrom,* 47 Wn.2d 77, 287 P.2d 124 (1955).

It may be that in the abstract the majority rule is appropriate. If, for example, Continental had cancelled because it appeared the self–insured liability figure was about to be exceeded or if the problem of proration was unknown to the parties prior to the date of cancellation then the rule might be applied. This is not what happened here.

Paccar was aware of the proration problem 7 months before the anniversary date and could have easily cancelled the policy before the annual premium became due. This was not done. Continental cancelled because agreement could not be reached and not because the self–insured liability figure was about to be exceeded. Paccar now argues that the policy should be construed in its favor and the annual retained aggregate limit prorated. I cannot agree. Proration of the annual retained aggregate limit in the event of cancellation before the anniversary date was not specified in the policy. There was no ambiguity. Equity, not in the abstractions of the majority but in the concrete terms of this case, lies not with Paccar but with Continental. No proration should occur.

I dissent.

UTTER and DIMMICK, JJ., concur with DOLLIVER, J.