NEW ENGLAND TEA & COFFEE COMPANY vs. FIREMAN'S FUND INSURANCE COMPANY. No. 99-P-1920. February 22, 2002. *Insurance,* General liability insurance, Insurer's obligation to defend. *Employment,* Termination.

James P. Feeney was fired from his employment with the plaintiff New England Tea & Coffee Co. (NET),[1] allegedly for violating a non-competition clause in his employment contract. Feeney brought a complaint against NET (and three individuals who evidently were principals of NET) alleging breach of contract; intentional and negligent infliction of emotional distress; and tortious interference with contractual relations. NET sought to have the defendant insurer defend Feeney's action under its general liability insurance policy, but the insurer declined. NET's claim for coverage is predicated on allegations in par. 19 of Feeney's complaint:

> "[O]n July 23, 1996, without advance warning of any kind, Feeney's employment was abruptly terminated. Feeney was instructed to leave all his personal belongings behind and then escorted off the premises in the presence of a police detail consisting of two police officers and a plain-clothes officer hired by New England Coffee for this purpose. The [t]ermination of Feeney's employment was handled in a manner intentionally calculated to degrade and humiliate Feeney by creating the false impression that Feeney somehow was a threat to the security of the company and/or had been guilty of criminal misconduct, without offering any explanation to the employees of New England Coffee as to the purported reasons for his termination or for the indignity of the manner in which it was handled. Further, the manner in which Feeney's employment termination was handled by New England Coffee caused Feeney to suffer damage to his reputation, not only within the company, but in the industry in which New England Coffee competes."

On cross-motions for summary judgment, a Superior Court judge denied NET's motion and allowed the insurer's motion, concluding that the language of the policy obligated the insurer to pay damages resulting from personal injury and to defend any such action seeking such damages where "personal injury" was "injury, other than bodily injury, arising out of . . . [o]ral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or [o]ral or written publication of material that violates a person's right of privacy" and that Feeney's complaint did not allege an injury or loss covered by the policy. The judge relied on the distinction noted in *Boston Symphony Orchestra, Inc.* v. *Commercial Union Ins. Co.,* 406 Mass. 7, 12-13 (1989) (hereafter *BSO*), in which liability was found under the phrase (not contained in the present policy) for "other defamatory or disparaging material" and based on facts extraneous to the complaint and known to the insurer (such as a public cancellation of a performance).

On our review of the material properly before the Superior Court judge, we conclude that judgment for the defendant was correct because the commercial general liability policy language at issue here is more restrictive than the language in *BSO*. In *BSO* the underlying complaint alleged damages that appeared to flow from the implications of *BSO's* act of canceling a particular

---

[1]Doing business as New England Coffee Company.

performance. *BSO*, 406 Mass. at 9. Although the allegations of the instant complaint may fairly be read so as to state a claim for damages that appear to flow from NET's act of terminating Feeney, here, however, unlike *BSO*, there was no public statement (oral or written) made by NET, the named insured, regarding Feeney's termination. Nor does Feeney's complaint allege any such statement.[2]

In short, the *BSO* case is not controlling here. Rather, we think the instant case is controlled in material respects by the reasoning in *Transamerica Ins. Co.* v. *KMS Patriots, L.P.*, 52 Mass. App. Ct. 189 (2001).

*Judgment affirmed.*

*Anne Robbins* for the plaintiff.

*John P. Ryan* (*Laura M. Gregory* with him) for the defendant.

---

[2]The motion judge noted: "[w]hat Feeney's Complaint omits, however, is any suggestion that [NET] disseminated the defamation."