# United States Court of Appeals
## For the First Circuit

No. 06-1857

GREAT AMERICAN INSURANCE COMPANY,
GREAT AMERICAN INSURANCE COMPANY OF NEW YORK,
GREAT AMERICAN ALLIANCE INSURANCE COMPANY,
GREAT AMERICAN ASSURANCE COMPANY,

Plaintiffs, Appellees,

v.

RISO, INC.,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. George A. O'Toole, Jr., U.S. District Judge]

Before

Boudin, Chief Judge,
Lipez, Circuit Judge,
and Shadur,[*] Senior District Judge.

Martin C. Pentz with whom Jeremy A. M. Evans and Foley Hoag
LLP were on brief for appellant.
Richard H. Nicolaides, Jr. with whom Mary F. Licari, Sarah E.
Eversman, Bates & Carey LLP, A. Hugh Scott, Robert A. Kole and
Choate, Hall & Stewart LLP were on brief for appellees.

March 8, 2007

---

[*]Of the Northern District of Illinois, sitting by designation.

**BOUDIN, <u>Chief Judge</u>.** This diversity case involves a dispute between Riso, Inc.--a distributor of digital duplicating machines and related parts and supplies--and its insurer GAIC,[1] as to whether GAIC had duties to defend and indemnify Riso in an antitrust suit filed against Riso by several California school districts, <u>Modesto City Schs.</u> v. <u>Riso Kagaku Corp.</u>, No. Civ. S-99-2214 (E.D. Cal., filed Nov. 5, 1999). The factual background is easy to recount; the legal issue is more difficult.

The <u>Modesto</u> complaint alleged that Riso had engaged in unlawful restraint of trade to ensure that owners of Riso machines--such as the school districts--would use only Riso supplies and service providers. The means included refusing to sell replacement parts to independent service providers, territorial restraints on its own dealers, tying machine sales to use of Riso parts, and disparaging competitors in the supplies market as "supply pirates" whose products could "cause serious damage"--not covered by Riso's warranty--to the machine.

Riso was protected during the period pertinent to the <u>Modesto</u> suit by primary and umbrella commercial general liability policies issued to it by GAIC between 1991 and 2000. The policies provided that GAIC would "pay those sums that [Riso] becomes

---

[1]We use "GAIC" to refer collectively to Great American Insurance Company, Great American Insurance Company of New York, Great American Assurance Company, and Great American Alliance Insurance Company.

legally obligated to pay as damages because of 'personal injury' . . . to which this insurance applies" and that GAIC had "the right and duty to defend [Riso] against any 'suit' seeking those damages for 'personal injury.'"

When the Modesto complaint was filed, Riso gave notice of the suit to GAIC, asserting coverage under these policies. It relied on the allegations of disparagement in the antitrust complaint as triggering the "personal injury" coverage of its GAIC policies. The policies defined "personal injury" as "injury, other than 'bodily injury,' arising out of one or more of the following offenses," namely, malicious prosecution, false arrest, wrongful eviction, invasion of privacy, and--pertinent here--

> d. [O]ral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services . . . .

GAIC refused to defend and the Modesto suit settled in November 2003. In October 2004, Riso sought a declaratory judgment in Massachusetts state court that GAIC had been obligated to defend and indemnify Riso in connection with the Modesto suit. GAIC countered with a declaratory judgment action in federal court and removed Riso's suit. The parties cross-moved, Riso for partial summary judgment that GAIC had a duty to defend, and GAIC for summary judgment that it had no duty to defend or indemnify.

In March 2006, the district court denied Riso's motion and granted GAIC's motion. The court reasoned that the policy covered only suits alleging the tort of product disparagement, and that GAIC therefore had no duty to defend suits alleging disparagement of parties other than the underlying plaintiffs. Alternatively it said that the Modesto plaintiffs' injuries did not "arise out of" Riso's disparagement of competitors' products because the disparagement did not "materially contribute" to those injuries.

This appeal followed and our review on summary judgment is de novo. OneBeacon Ins. Co. v. Georgia-Pacific Corp., 474 F.3d 6, 7 (1st Cir. 2007). Massachusetts law, which governs in this case, provides that an insurer's duty to defend against a third-party suit is broader than its duty to indemnify, taking account of the uncertainty as to what may be proved. In determining whether the duty to defend has been triggered, the complaint is to be construed broadly:

> It is settled in this jurisdiction . . . that the question of the initial duty of a liability insurer to defend third-party actions against the insured is decided by matching the third-party complaint with the policy provisions: if the allegations of the complaint are 'reasonably susceptible' of an interpretation that they state or adumbrate a claim covered by the policy terms, the insurer must undertake the defense. Otherwise stated, the process is one of envisaging what kinds of losses may be proved as lying within the range of the allegations of the complaint, and then seeing whether any such loss

fits the expectation of protective insurance reasonably generated by the terms of the policy.[2]

By contrast, the duty to indemnify is triggered only "when a judgment within the policy coverage is rendered against [the] insured." Boston Symphony Orchestra, Inc. v. Commercial Union Ins. Co., 545 N.E.2d 1156, 1158 (Mass. 1989) ("BSO"). In resolving both duty questions, we focus (as the parties have done) on the duty to defend. As to it, the Modesto complaint is reasonably straightforward and there is little doubt that it alleged disparagement as one of the acts directed by Riso against its competitors.

Nevertheless, the allegations made by the Modesto complaint seem at first blush to fall outside the ambit of the policies' express coverage. The pertinent policy language requires that the injury in the underlying case "aris[e] out of" one of "the [listed] offenses"--and the pertinent listed offenses appear to be the torts of libel, slander, and commercial disparagement. The Modesto suit, a garden-variety antitrust suit, fits none of these "offense" categories.

Specifically, the Modesto complaint does not allege that either the Modesto plaintiffs or their "goods, products or services" were ever disparaged by Riso. Thus the Modesto

---

[2]Sterilite Corp. v. Cont'l Cas. Co., 458 N.E.2d 338, 340-41 (Mass. App. Ct. 1983) (Kaplan, J.) (internal citations omitted); see also Cont'l Cas. Co. v. Gilbane Bldg. Co., 461 N.E.2d 209, 212 (Mass. 1984).

plaintiffs could not themselves maintain a defamation or commercial disaragement action under California law; defamatory or disparaging statements must be "of and concerning" the plaintiff. Blatty v. New York Times Co., 728 P.2d 1177, 1186-87 (Cal. 1986), cert. denied, 485 U.S. 934 (1988). A number of courts have therefore dismissed policy-coverage claims quite similar to that asserted by Riso in the present case.[3]

But the Massachusetts Supreme Judicial Court ("SJC") chose a different path in BSO. There the SJC found that the insurer had a duty to defend the BSO in a breach of contract suit brought by Vanessa Redgrave following the BSO's cancellation of her scheduled performances. Redgrave alleged that the BSO's cancellation had "led others to refrain from hiring [her] for professional engagements" by damaging her reputation, and sought consequential damages "analogous to damages for defamation." BSO, 545 N.E.2d at 1158 & n.4.

The policy language in BSO covered inter alia injuries arising from "offenses" including "the publication or utterance . . . of other defamatory [or] disparaging material." 545 N.E.2d at 1158-59. Although Redgrave's complaint did not describe an

_____

[3]See, e.g., Microsoft Corp. v. Zurich Am. Ins. Co., 2001 WL 765871, at *6 (W.D. Wash. 2001) (applying Washington law); QSP, Inc. v. Aetna Cas. & Sur. Co., 773 A.2d 906, 916, 918 (Conn. 2001) (applying Connecticut law); Motorists Mut. Ins. Co. v. Nat'l Dairy Herd Improvement Ass'n, Inc., 750 N.E.2d 1169, 1175 (Ohio Ct. App. 2001) (applying Ohio insurance law).

-6-

"offense" of libel or slander or commercial disparagement, the SJC nonetheless held that the insurer had a duty to defend. Noting that ambiguities in the policy should be resolved against the insurer, the SJC (id. at 1159) gave "disparagement" its ordinary meaning--"to speak slightingly of"--and reasoned that

> [t]he essence of Redgrave's claim . . . was that the BSO's breach of contract somehow spoke slightingly about her and damaged her reputation.

Riso argues that BSO governs in this case because the Modesto complaint charged disparagement in the lay sense-- specifically, by Riso of its competitors' products--and the underlying plaintiffs' injuries allegedly "arose out of" this disparagement. That other wrongs were also alleged does not matter, since the duty to defend is normally triggered where any of the plaintiff's allegations invoke coverage. 1 B. Ostrager & T. Newman, Handbook on Insurance Coverage Disputes § 5.02[a](11th ed. 2002). GAIC responds that BSO should not be extended to an antitrust claim so fundamentally remote from its defamation and disparagement policy coverage.

The language of Riso's policy differs from BSO's policy and perhaps more strongly suggests an intent to limit coverage to the torts of libel, slander, and commercial disparagement.[4] But,

---

[4]Riso's policy covers injuries resulting from "material that . . . disparages a person's or organization's goods, products or services"; by contrast, BSO's policy referred simply to "other . . . disparaging material." While both phrases extend coverage to

-7-

given the "construe against" canon relied upon in <u>BSO</u>, 545 N.E.2d at 1159, possibly the SJC would reject such a literal reading of the Riso policy, just as it did in <u>BSO</u> itself. But even if the SJC treated the policies as similar, the complaints in the two cases are quite different.

The complaint in the <u>BSO</u> case, generously construed, could be viewed as something closely related to a classic defamation claim. Although formally one for breach of contract, it arguably involved representations (implied by the BSO's cancellation of the contract) damaging to the character of the plaintiff, directly impacting the plaintiff's reputation as an actress and causing damage to the plaintiff's earning capacity. <u>Id.</u> at 1158. The suit could be seen, by a stretch, as one for defamation sailing under a foreign flag.

It would be hard to say the same about the <u>Modesto</u> antitrust complaint. Riso did not even arguably defame the <u>Modesto</u> plaintiffs or their educational services; the disparagement, if it occurred, was directed toward other commercial entities competing with Riso; and the damages to the <u>Modesto</u> plaintiffs, if any occurred, were due to the higher costs caused by Riso's higher prices, rather than any injury to the plaintiffs' reputations.

---

injuries beyond those resulting from common law libel or slander, the scope of Riso's coverage is narrower and focused on the elements of commercial disparagement.

BSO can be read modestly or for all it could be worth. We think that the right course is the modest reading, which certainly excludes coverage for an antitrust complaint like this one. BSO itself is a step beyond where most courts have gone; and, mechanically read, it could be extended indefinitely. Imagine a securities fraud action in which the false boosting of the seller's stock involved (or implied) disparagement of a competing stock that the buyer was considering.

Admittedly, one federal court in another circuit has followed BSO's logic into new territory.[5] But we think it more telling that the Massachusetts Appeals Court has declined to read BSO expansively. New England Tea & Coffee Co. v. Fireman's Fund Ins. Co., 763 N.E.2d 103, 104 (Mass. App. Ct. 2002). The complaint in BSO was arguably close to classic defamation--a view reflected in the BSO decision's own language. 545 N.E.2d at 1158 n.4, 1159. If BSO is to be extended, it should by done by the SJC.

Riso argues that the policy language refers to "material . . . that disparages a person's or organization's goods, products or services" (emphasis added). The indefinite article "a," says Riso, indicates that the disparaged party need not be the same as the underlying plaintiff, so long as the latter's injuries are

---

[5]Knoll Pharm. Co. v. Auto. Ins. Co. of Hartford, 152 F. Supp. 2d 1026, 1034 (N.D. Ill. 2001). But see QSP, 773 A.2d at 925-30; Purdue Frederick Co. v. Steadfast Ins. Co., 801 N.Y.S.2d 781 (N.Y. Sup. Ct. 2005) (table), 2005 WL 1662028 at *7.

causally connected to covered conduct.  Cf. Knoll, 152 F. Supp. 2d at 1034.  And, Riso reminds us, ambiguities in policy language are to be construed against the insurer.  BSO, 545 N.E.2d at 1159.

The ambiguities canon applies only where the policy can reasonably be read two ways, and the touchstone of coverage is "expectation of protective insurance reasonably generated by the terms of the policy," Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co., 788 N.E.2d 522, 531 (Mass. 2003) (quoting Sterilite, 458 N.E.2d at 340-41).  Whatever the explanation for using "a," the relevant core coverage in Riso policies is for defamation and commercial disparagement, and we think it unlikely in the extreme that the policy drafter or purchaser intended coverage for the antitrust offense framed in the complaint.

We hold that the district court correctly ruled that the insurer did not have a duty to defend Riso against the antitrust complaint--a complaint brought by plaintiffs who never themselves suffered any reputational injury and whose allegations of disparagement instead concerned anticompetitive conduct directed against others not party to the suit.  On the present facts, this conclusion also negates any apparent basis for a duty to indemnify.

Affirmed.